[Sac. No. 4158. In Bank.—July 23, 1929.]

MERCED SECURITY SAVINGS BANK, Respondent, v. BENT BROS., INC. (a Corporation), Appellant.

Hill, Morgan & Bledsoe, A. S. Montague and Hugh K. Landram for Appellant.

Louis Ferrari and F. W. Henderson for Respondent.

WASTE, C. J.—On the seventeenth day of September, 1926, at Los Angeles, Bent Bros., Inc., the appellant here, drew its check on the Merchants National Bank of Los Angeles in the sum of $5,000, payable to the order of the Farmers & Merchants National Bank of Merced. It mailed the check to the Merced bank for the purpose of depositing the amount of the check to its credit. The bank received the check by mail on the morning of September 18th, and credited the sum of $5,000 in the usual manner to the account of Bent Bros., Inc. Later in the day it indorsed and delivered the check to the Merced Security Savings Bank, the respondent, in settlement of a clearance of business for that day between the two institutions. At noon, the Farmers & Merchants National Bank of Merced closed its doors and, under orders from the national bank examiner, was not thereafter permitted to resume business.

When the respondent presented the check of Bent Bros., Inc., to the Los Angeles bank on which it was drawn, payment had been stopped, and the check was accordingly dishonored. Respondent thereupon presented the check to Bent Bros., Inc., and its payment was again refused. The Merced Security Savings Bank thereupon brought this action against Bent Bros., Inc., to recover the amount of the check. The trial court found that the plaintiff took the check as an innocent purchaser, and in good faith for value, and without notice of any equities existing in favor of Bent Bros., Inc., and without any knowledge of the insolvency and consequent inability of the Farmers & Merchants National Bank of Merced to meet its financial

obligations. Judgment was accordingly entered for the plaintiff, and the defendant has appealed.

Appellant disputes the correctness of the findings of the trial court, and contends that the evidence not only fails to give them support, but, on the contrary, "conclusively demonstrates that the defendant had the legal right to stop payment of the check and therefore cannot be held liable by reason of its nonpayment." The evidence upon which appellant relies for support of its contention that the respondent was not a holder in due course, but took the check in question with knowledge of its infirmity, relates to the transactions had between the two Merced banks during the forenoon of Saturday, September 18th, in settlement of the balance shown by their clearances for the 17th and 18th. There appear to have been two independent settlements. A draft on the San Francisco correspondent of the Farmers & Merchants National Bank, which it had given to respondent in settlement for the balance due respondent following the clearances on Friday, the 17th, was dishonored. Respondent was notified of that fact by a telephone message from the San Francisco correspondent of the Farmers & Merchants National Bank at about 10 o'clock on Saturday morning. The officers of respondent immediately got in touch with the officers of the Farmers & Merchants National Bank for the purpose of getting "either the cash or satisfactory security" for the amount of its dishonored draft, in order to avoid the necessity of charging it back to the Farmers & Merchants National Bank or its San Francisco correspondent. It was agreed between them that respondent would accept "notes and any other securities" the Farmers & Merchants National Bank might have to cover the amount of the dishonored draft. This arrangement appears to have been carried out and adjusted just prior to the closing of the banks for the day; and the officers of the two banks thereupon entered upon the customary Saturday clearance for the business done between the banks on the morning of the 18th. The balance was found to be in favor of the respondent, and the Farmers & Merchants National Bank indorsed and delivered to respondent, in settlement, five checks which had been drawn in its favor, including the check for $5,000 drawn by appellant, the aggregate amount of the checks being

$7,500. It does not appear that there was a clearing-house in existence at Merced at this time. The banks seem to have settled their business transactions directly between themselves. At least, that was so in the case at bar, and according to the evidence the settlement on the morning of September 18th was had in accordance with the usual and ordinary course of business between the two institutions. Thus far, the evidence fully sustains the finding of the trial court that the respondent bank took the check in the due course of business between itself and the Farmers & Merchants National Bank of Merced, and for a valuable consideration.

The Farmers & Merchants National Bank transacted business as usual until 12 o'clock noon on Saturday, September 18th, when it closed its doors for the day. On Sunday, September 19th, its directors met, and by resolution declared that, inasmuch as the bank was in an insolvent condition, its reserves exhausted, and its credit impaired, its doors would not be opened, but it would be placed in the hands of the national bank examiner unless the officers of the bank were able to obtain cash from some source to enable it to carry on, before 10 o'clock on Monday, the 20th. Apparently the institution was unable to secure the needed cash, for, by direction of the national bank examiner, it did not thereafter do any banking business. From these facts, and because of the fact of notice of the dishonoring of the draft drawn in favor of respondent in settlement of Friday's clearings between the two institutions, the appellant argues that the respondent was fully cognizant of the insolvent condition of the Farmers & Merchants National Bank, and did not act in good faith in the transaction, in that it took the check after notice of the dishonor of the draft, and did not make, or cause to be made, any investigation for the purpose of ascertaining whether or not the funds of the Farmers & Merchants National Bank had been exhausted.

We are of the view that the testimony of the officers of the respondent bank sufficiently shows that the action taken by that bank was neither fraudulent nor taken in bad faith. There is evidence that one or more of the officers of the respondent bank may have had some knowledge at some time on Saturday, the 18th, that "the condition of the

Farmers & Merchants National Bank was not altogether satisfactory," but it falls short of demonstrating that the respondent was acting in bad faith and with a view to protect itself against loss, in the event the Farmers & Merchants National Bank was insolvent. We are not prepared to accept the construction that appellant advances of the testimony as to what, if any, knowledge the officers of the respondent bank had concerning the affairs of the other institution. The trial court was charged with the duty of construing the evidence, in the light of the entire transaction, and making the necessary deductions therefrom. We are not prepared to hold that it was wrong in reaching the result it did.

■■ Appellant contends that the transfer of the check of the appellant to the respondent bank was null and void, in that it was made after the commission of an act of insolvency, or in contemplation thereof, and made with a view to prevent the application of its assets in the manner prescribed by the National Bank Act [12 U. S. C. A., sec. 91]. It cites and relies upon *National Security Bank* v. *Butler,* 129 U. S. 223 [32 L. Ed. 682, 9 Sup. Ct. Rep. 281]; but the facts there were different. We gather from the opinion that the transfer there in question was made after the directors had voted that the bank should go into liquidation, and should be closed to business, and it was made with a view, on the part of the Pacific Bank and of its cashier, who represented it and acted for it in this transfer of its assets, to prevent the application of its assets in the manner prescribed by the National Bank Act, and with intent to prefer the bank to which the transfer was made over other creditors. We are unable to discover in the transaction before us any such motive, either on the part of the Farmers & Merchants National Bank or the respondent, or their officers.

■■ To constitute notice of any infirmity in the check of the appellant, or defect in the title thereto of the Farmers & Merchants National Bank, the respondent must have had actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith. (Civ. Code, sec. 3137.) The check was complete and regular upon its face, and it had not been previously dishonored. It was taken by the

respondent in good faith and for valuable consideration, passing by reason of the settlement for the balance due on the clearances on September 18th, and respondent had no notice of any defect in the title of the negotiating bank.

The judgment is affirmed.

Preston, J., Seawell, J., Curtis, J., and Richards, J., concurred.