[Civ. No. 4972. Third Appellate District.—March 10, 1934.]

JAMES MILLS ORCHARD COMPANY (a Corporation), Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Appellant.

W. T. Belieu, C. H. White, Louis Ferrari and W. E. Johnson for Appellant.

George R. Freeman for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $4,148.79, which was rendered against it in a suit for conversion of money on deposit in its bank. The appellant contends the money was deposited to the credit of

Kitrick & Hall, who were grain merchants and brokers, and that it was derived from the proceeds of the sale of barley previously sold and delivered to them by the plaintiff as evidenced by three negotiable warehouse receipts therefor, and that the bank lawfully applied the money to the payment of an existing debt of the brokers represented by their promissory note, pursuant to section 3054 of the Civil Code, without knowledge on its part of any defect of title thereto. It is asserted the finding to the effect that Kitrick & Hall were not the owners of the fund which was credited to the payment of their promissory note, with implied knowledge on the part of the bank of the lack of title thereto, is not supported by the evidence.

In support of the judgment, the respondent declares that the warehouse receipts for the grain which was held in storage by the brokers were indorsed and delivered to Kitrick & Hall in trust, for the sole purpose of enabling them to sell the grain as directed, and that the bank had knowledge of the brokers' lack of title thereto.

The plaintiff is a corporation which owned 3,756 sacks of barley, aggregating 402,700 pounds, which were stored in the DePue warehouse of Kitrick & Hall at Orland, evidenced by three warehouse receipts therefor. Kitrick & Hall owned and operated several warehouses including the one where the grain was stored. They were depositors in the defendant's branch of the Bank of America at Oroville, where they had an open current account. They were also indebted to the defendant bank in the sum of $8,000 upon a promissory note due July 7, 1931, and secured by certain designated certificates of stock. About April 22, 1931, James Mills, Jr., vice-president of the plaintiff corporation, instructed W. S. Hall, of the firm of Kitrick & Hall, to sell the 3,756 sacks of barley. The following letter was sent to Mr. Hall, directing the sale of the barley for plaintiff:

"James Mills Orchard Corporation
        "Main Office
    "Hamilton City, California.

                                    "April 22, 1931.

"Mr. W. S. Hall
    "Chico, California
"Dear Bill:
    "I have been trying to get you by phone but the wind apparently does not permit. I have a hunch that we might

get a shower out of this condition today. Buyers in barley have been hounding me now for three days so the market is hot. Some intimated over $1.00. I believe you can get between $1.05 and $1.10. I will leave the price over a dollar entirely to your judgment, so will you make sale of our barley today or tomorrow, getting as much as you can warehouse receipt. The amounts in the different lots are as reported to you last week. Thanks.

"I haven't made a definite check against warehouse, so sell approximate amounts, subject to our check. We won't be many sacks off one way or the other. I will have warehouse receipts brought up to date and deliver them to you when sale is consummated. Scott is checking now and will advise you definitely the number of sacks as soon as telephone conditions permit.

"Yours sincerely,<br>"JAS. MILLS JR."

Pursuant to the foregoing directions, Mr. Hall promptly sold the barley to Kettenbach Grain Company of San Francisco for $1.05 per hundred pounds. It was agreed the usual commission of twenty-five cents per ton was to be charged by the brokers for the sale of the grain. The net amount which remained for the credit of plaintiff upon the sale of the barley was the sum of $4,148.79. Upon receipt of the foregoing authorization to sell the barley, Mr. Hall called the vice-president of the plaintiff corporation on the telephone and told him he had a sale for the barley at $1.05 per hundred pounds. The three warehouse receipts for the grain were thereupon indorsed "James Mills Orchard Co., By B. H. Scott, Asst. Sect.", and personally delivered to Mr. Hall with direction to sell the grain for $1.05 per hundred. The plaintiff instructed Mr. Scott to accept Kitrick & Hall's "check for that (amount) in lieu of the passing the whole transaction through our name, *simply as an accommodation*". Mr. Mills, Jr., testified the grain was not sold to the brokers. April 24, 1931, Kitrick & Hall, in compliance with the foregoing agreement, drew their check on the defendant bank, in favor of plaintiff for the sum of $4,148.79, which represented the full selling price of the barley, less agreed commissions. The check was presented to the defendant bank for payment April 28, 1931.

On April 24, 1931, which is the date upon which Kitrick & Hall received the warehouse receipts from plaintiff, they drew a draft on Kettenbach Grain Company of San Francisco for $4,198.36, the purchase price of the grain. The three warehouse receipts were attached thereto, and forwarded to them through the defendant bank for collection. The following day this sum, together with other deposited amounts aggregating $5,729.91, was credited to the account of Kitrick & Hall in the bank of the defendant at Oroville. Two days later, on April 27th, W. S. Hall died. Notice of his death was conveyed to the defendant the same day. The return from the Kettenbach draft was actually paid to the defendant bank April 29th. This deposit gave Kitrick & Hall's bank account a total credit of $6,601.96.

Upon notice of the death of Mr. Hall, the defendant bank began an investigation concerning the adequacy of the collateral securities which it held for the payment of the Kitrick & Hall promissory note of $8,000. On April 28th the defendant bank charged against the account of Kitrick & Hall the entire balance to their current account, except the sum of $1.96, and credited the amount of $6,600 to the payment of their promissory note of $8,000. This transfer was made by the bank without notice to plaintiff of the defendant's claim of right to satisfy the banker's lien for the payment of the promissory note pursuant to the provisions of section 3054 of the Civil Code. The appellant claims this transfer of funds was made without knowledge on its part of any infirmity of title of Kitrick & Hall to the negotiable warehouse receipts, or that the plaintiff asserted title to the proceeds of the sale of the grain, and upon the contrary, that the grain was actually sold and delivered to the brokers.

Mr. Stapleton, assistant cashier of the First National Bank of Oroville, testified that he presented to the defendant bank the Kitrick & Hall check of $4,148.79 in favor of the plaintiff, prior to 10 o'clock on April 28th. This was the same day the bank debited the account of Kitrick & Hall, and credited their promissory note with the sum of $6,600. Payment of this check was refused by the bank on the alleged ground of "insufficiency of funds", although there was then adequate funds with which to pay the check. It was admitted by Mr. Ashley, assistant manager of the defendant bank, that the account of Kitrick & Hall was not debited

with the $6,600 item until the afternoon of April 28th. The account of Kitrick & Hall therefore possessed ample funds in the defendant's bank with which to pay the plaintiff's check of $4,148.79 at the time it was presented for payment. Mr. Humphrey, the manager of the defendant bank, was in Chico on the day this check was presented to his bank for payment, investigating the value of the securities which the bank held for the payment of the Kitrick & Hall note. Mr. Humphrey then knew of the draft upon the Kettenbach Grain Company of San Francisco and of the warehouse receipts attached thereto, and of the presenting of the $4,148.79 check for payment by the plaintiff.

At the trial, upon evidence of the foregoing facts, the court adopted findings to the effect that plaintiff was the owner of 3,756 sacks of barley which were stored in the DePue warehouse of Kitrick & Hall at Oroville, evidenced by the three negotiable warehouse receipts therefor; that the grain was consigned to the brokers as its agents, on April 23, 1931, for sale at $1.05 per hundredweight, with an agreement to pay twenty-five cents per ton as commission for negotiating the sale; that the warehouse receipts were indorsed by the owner and delivered to the brokers in trust for the sole purpose of enabling them to sell and deliver the grain as directed; that the grain was sold to Kettenbach Grain Company of San Francisco on April 24th at the agreed price of $1.05 per hundred pounds, and was paid for by Kitrick & Hall drawing and delivering to plaintiff their check for $4,148.79 on the last-mentioned date, and at the same time drawing a draft upon the San Franciso purchasers thereof for that amount plus commissions, to which draft the indorsed warehouse receipts were attached, and forwarded for collection through the defendant bank at Oroville, which then credited the Kitrick & Hall account in its bank with the full amount of the draft; that the grain was not sold to Kitrick & Hall, and that they had no title or interest therein except as commission brokers for the purpose of consummating the sale of grain as directed by the plaintiff; that at the time of transferring the amount of $6,600 from the account of Kitrick & Hall to the credit of their promissory note, which was held by its bank, the defendant "had notice of the fact that neither said W. S. Hall nor Kitrick & Hall Warehouse Company, a corporation, was the

owner of the grain represented by said warehouse receipts, and had notice that said warehouse receipts and the proceeds to be collected on said draft . . . was the property of the plaintiff herein, and had notice that said W. S. Hall was acting as an agent for plaintiff in the transaction for the sale of said barley''. The court thereupon rendered judgment against the defendant for conversion in the amount of $4,148.79. From this judgment an appeal was perfected.

█ The evidence heretofore recited is adequate to support the finding that plaintiff is the owner of the proceeds of sale of barley which belonged to it, amounting to the sum of $4,148.79, which was deposited in defendant's bank to the credit of the account of Kitrick & Hall.

█ We are of the opinion there is sufficient evidence in the record to show that the defendant had actual notice of the fact that the money which was deposited to the credit of Kitrick & Hall on April 25th, to the extent of the amount of their check of $4,148.79, for the sale of the grain, belonged to the plaintiff, and that the defendant's appropriation of that amount to the payment of the $8,000 note of Kitrick & Hall amounted to a wrongful conversion thereof.

The respondent contends that it is unnecessary to show that the bank had actual knowledge of the defect of Kitrick & Hall's title, and upon the contrary that all that is required is proof of ''circumstances sufficient to put a prudent man upon inquiry'' regarding that matter. (Sec. 19, Civ. Code; *Keeney* v. *Bank of Italy,* 33 Cal. App. 515 [165 Pac. 735] ; *Lady Washington Cons. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809] ; 20 Cal. Jur. 234, sec. 4.) █ Since the draft upon Kettenbach Grain Company for the purchase price of the barley was accompained by the negotiable warehouse receipts indorsed by the plaintiff, we assume that the law required proof of either actual knowledge of the defect of title of the negotiable instruments or proof of circumstances amounting to bad faith on the part of the defendant in appropriating the funds to the payment of its note of Kitrick & Hall. (Sec. 3137, Civ. Code; *Robb* v. *Cardoza,* 110 Cal. App. 116, 122 [293 Pac. 851] ; *Goodale* v. *Thorn,* 199 Cal. 307, 314 [249 Pac. 11].) Section 3137, *supra,* provides: ''To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the

infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

The following circumstances which are disclosed by the record or reasonably inferred therefrom afford adequate support of the findings and judgment to the effect that the defendant possessed actual knowledge of the fact that the proceeds of sale of the grain, to the extent of $4,148.79, belonged to plaintiff, to wit: The defendant knew that Kitrick & Hall were commission brokers engaged in selling grain for commissions; they knew the 3,756 sacks of barley formerly belonged to plaintiff and were stored in the warehouse of Kitrick & Hall, as the warehouse receipts clearly showed; they knew that the draft upon Kettenbach Grain Company of San Francisco was for the purchase price of this grain as shown by the attached warehouse receipts; they knew that the drawing of the draft for the purchase price of the grain with the attached warehouse receipts, and the delivery of the Kitrick & Hall check of $4,148.79, bearing the same date of April 24th, were a part of the same transaction; the check was presented to the bank for payment before the draft was honored and before the payment thereof was returned to the bank; there were ample funds in the bank to the credit of Kitrick & Hall at the time the defendant refused to pay the plaintiff's check upon the alleged ground of ''insufficient funds''; the bank must have known Kitrick & Hall were not the purchasers of the grain, for at the time their check of $4,148.79 was drawn in favor of plaintiff, they had to their credit in the bank only the sum of $2,273.86. Not until after the death of Mr. Hall did the defendant exercise itself to apply the fund to the payment of the $8,000 note. These, and other circumstances disclosed by the record, would seem to be sufficient to charge the defendant with knowledge of the fact that the grain belonged to plaintiff, and that the warehouse receipts conveyed no title to Kitrick & Hall, but upon the contrary were attached to the draft by them as brokers and deposited in the bank for collection against the purchasers of the barley.

It does not appear that the collateral security for the payment of the $8,000 note which is held by the defendant is insufficient with which to satisfy that obligation. It would be a grave injustice to permit the arbitrary conversion of plaintiff's money to the payment of the brokers' note under

the circumstances of this case. We are of the opinion there is sufficient evidence to charge the defendant with knowledge of the transaction including the fact that Kitrick & Hall were not the actual owners or holders of the warehouse receipts.

■ For the foregoing reasons it follows that the defendant did not become the holder of the warehouse receipts in due course of business, under the provisions of section 3133 of the Civil Code, for the reason that it had notice of the infirmity of the title thereto.

■ Nor is the plaintiff estopped from asserting title to the proceeds of the sale of its grain merely because it indorsed the warehouse receipts and placed them in the hands of its agents to enable them to negotiate the sale, since the bank was in possession of facts which charge it with knowledge of the fact that plaintiff was the real owner thereof.

■ The admission of evidence of an oral agreement between the plaintiff and its agents Kitrick & Hall of the mere consignment of the grain for the purpose of sale is harmless, since the same facts are adequately supplied by the subsequent letter of instructions which was properly admitted in evidence and therefore becomes cumulative.

The judgment is affirmed.

Plummer, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 9, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 7, 1934, and the following opinion then rendered thereon:

THE COURT.—The petition to have this cause heard and determined by this court after judgment in the District Court of Appeal of the Third Appellate District, was denied on May 7, 1934. In that connection it should be said:

The statement in the opinion of the District Court of Appeal "that it does not appear that the collateral security for the payment of the $8,000.00 note which was held by the defendant is insufficient with which to satisfy that obligation" was unnecessary for the decision and should be disre-

garded. The finding of the trial court, approved by the decision, that "prior to and at the time of debiting said account (of Kitrick and Hall Warehouse Company) and thereafter, the defendant had notice of the fact that neither said W. S. Hall nor Kitrick & Hall Warehouse Company, a corporation was the owner of the grain represented by said warehouse receipts and had notice that said warehouse receipts and the proceeds to be collected on said draft, . . . was the property of the plaintiff . . . and had notice that said W. S. Hall was acting as an agent for plaintiff in the transaction for the sale of said barley", leaves the case in harmony with the decision of this court in *Arnold* v. *San Ramon Valley Bank*, 184 Cal. 632 [194 Pac. 1012, 13 A. L. R. 320], and other cases to like effect.