CURTIS, J.
The defendant, Horatio G. McMillan, was the owner of two-fifteenths of a certain trust estate created under the last will and testament of his father, Anthony McMillan, deceased, and established by the decree of distribution in the estate of said decedent. The Bank of California, National Association, was the trustee of said trust estate. On June 28, 1926, the said Horatio G. McMillan, executed his promissory note for $30,000 in favor of defendant, Marshall Nuckolls, and assigned his two-fifteenths of said trust estate *280 to the said Marshall Nuckolls as security for the payment of said promissory note. The note bore interest at 12 per cent per annum, compounded semi-annually, and is referred to in the record as note No. 1. After the execution and delivery of this note, the parties to this transaction evidently became aware that the note as drawn was usurious under the Usury Law then in force in that it bore interest at the maximum rate provided by the Usury Law and in addition thereto this interest was compounded. Accordingly and for the purpose t of remedying this defect, on March 30, 1928, Horatio G. McMillan executed a new note for the same amount with the same rate of interest, except that there was no compound interest provided in the new note, which is referred to in this record as note No. 2. This note, although executed on March 30, 1928, was dated June 28, 1926 (the same date which note No. 1 bore), and interest was payable from that date. The assignment of the two-fifteenths of the trust estate given as security for the payment of note No. 1 was by the agreement of the parties made to continue as security for the payment of note No. 2.
At the time note No. 1 was executed, Marshall Nuckolls and plaintiff, Anna B. Nuckolls, were husband and wife, and the said note was their community property. Thereafter a divorce was granted to these parties, and on January 7, 1927, Marshall Nuckolls in a contemplated division of the community property of himself and wife assigned to Anna B. Nuckolls note No. 1, although he retained physical possession of said note. This note was in his possession when, on March 30, 1928, he surrendered it up to Horatio G. McMillan and received in exchange therefor note No. 2, as stated above. Thereafter on the 26th day of November, 1928, the said Marshall Nuckolls and Anna B. Nuckolls consummated their property settlement, and on that date said Marshall Nuckolls transferred and assigned to Anna B. Nuckolls note No. 2 and by written assignment transferred to her the assignment of said two-fifteenths of said trust estate held by him as security for the payment of said note No. 2 and at that date said Marshall Nuckolls delivered to the said Anna B. Nuckolls said note No. 2 and said assignment of McMillan given to secure the payment of said note. After the delivery of said note No. 2 to Anna B. Nuckolls, Marshall Nuckolls continued to collect *281 the interest thereon at the rates specified therein for and on behalf of Anna B. Nuckolls.
Other loans were made to McMillan, all of which were secured by assignments of the two-fifteenths of said trust estate. It is not necessary to specify any of these subsequent loans except the loan of $6,000 on June 5, 1930, evidenced by a promissory note to Marshall Nuckolls. This note and security were transferred and assigned to Anna B. Nuckolls on June 6, 1930.
There were the following further transfers or liens against Horatio G. McMillan’s interest in said trust estate:
(1) On May 3', 1930, McMillan assigned his interest in said trust estate to General Motors Corporation to secure the payment of $2,980.37 with interest at 7 per cent per annum.
(2) On January 9, 1932, McMillan made a further assignment of his interest in said trust fund to secure the payment of a promissory note for $1,000.
(3) On June 30, 1933, McMillan borrowed $2,500 from the Pacific National Bank and assigned his interest in said trust to secure the payment of said sum.
(4) On September 24, 1934, in an action brought by T. J. Keegan against McMillan, a writ of attachment was served upon the defendant, the Bank of California, National Association, as trustee, in an action to recover $15,983.
This action was instituted on October 10, 1933, by plaintiff Anna B. Nuckolls to recover the several amounts due her from McMillan on the several loans held by her against McMillan, and to foreclose the interest of McMillan in said trust estate. All of the above-named persons and corporations claiming liens against McMillan’s interest in said trust estate were made parties defendant. McMillan was also made a defendant, but after the institution of the action he was declared bankrupt and M. C. Svmonds, his trustee in bankruptcy, was made a party to the action, and filed an answer and cross-complaint. All the defendants, including Symonds as trustee, set up usury as a defense to various of the claims of plaintiff. The General Motors Corporation set up an additional defense which will be stated more definitely and considered later in this opinion.
The court found that note No. 2 and certain of the other obligations of Horatio G. McMillan, held by plaintiff and mentioned above, were, at the respective dates upon which *282 they were incurred, usurious and in violation of the Usury Law of 1918, but that said Usury Law had been repealed on November 6, 1934, by the adoption of article XX, section 22, of the state Constitution; accordingly neither note No. 2 nor any of the other obligations were usurious or contrary to any usury statute of the state of California, and that they are “and each of them is founded and based upon a valuable, good, and sufficient consideration”. Judgment was rendered in favor of plaintiff Anna B. Nuckolls for the full amount of her several claims with interest. The following-named defendants have appealed from said judgment: M. C. Symonds, the trustee in bankruptcy; Pacific National Bank, George L. Crabtree, General Motors Corporation and T. J. Keegan.
Only two points are raised in appellants’ opening brief. One of these affects the interest and is made in behalf of all of the appellants and the other concerns the judgment only in so far as it determines the rights of the appellant General Motors Corporation. These points, as stated in the brief, are as follows: (A) Was the Usury Law of the state of California repealed by the constitutional amendment of 1934? (B) The court erred in holding that the six-thousand-dollar note of Horatio G. McMillan executed in favor of Marshall Nuckolls and by him assigned to the plaintiff Anna B. Nuckolls had priority over the claim of General Motors Corporation.
As to the first of these two points which involves the present status of the Usury Law in this state, the question therein involved was considered and determined by this court in its opinion in the case of Penziner v. West American Finance Co., ante, p. 160 [74 Pac. (2d) 252], It was there held that the Usury Law of 1918 was still in full force and effect except as to those provisions thereof which are in conflict with article XX, section 22, of the Constitution, adopted in the year 1934. It is not necessary to repeat here our decision of that subject as contained in the opinion in that case upon the present status of the Usury Law in this state.
However, appellants were apparently not willing to rest their ease upon the sole ground that the Usury Law has not been repealed, as they have devoted a considerable portion of their opening brief under the “first point” to an attempt to show that Anna B. Nuckolls was not a holder in due course of the notes and securities held by her, which were executed *283 by the said Horatio G. McMillan and secured by assignments of his interest in said trust estate, and not being such a holder of these securities the defense of usury was available to appellants to defeat, or at least to reduce the amount of, her claims as fixed by the judgment in this action.
In connection with this question, the record shows that the court found that Anna B. Nuckolls acquired said obligations before maturity in good faith and for value without actual notice of any infirmity in any of the instruments or defect in the title of the defendant Marshall Nuckolls, and without any actual notice of any defense to any of said instruments.
There was nothing usurious on the face of any of the obligations and there was nothing in the body of any of them to indicate to an innocent purchaser that it was usurious. The law in this state is well established that the defense of usury is not available against a holder in due course. (Brown v. Guaranty Mortgage Co., 220 Cal. 532 [31 Pac. (2d) 788], Connon v. Goebel, 217 Cal. 399 [18 Pac. (2d) 931], Community Lumber Co. v. Chute, 215 Cal. 268 [10 Pac. (2d) 57], and Baker v. Butcher, 106 Cal. App. 358 [289 Pac. 236].)
Appellants contend, however, that other specific findings of the court show that plaintiff was not the holder of said note in due course, and that after she became the owner of said note she knowingly collected usurious interest thereon. The court found that plaintiff acquired said note in a property settlement with her husband Marshall Nuckolls, from whom she had been divorced. Appellants make no claim that plaintiff did not acquire said obligation for value, but base their contention that the defense of usury is available to them against the plaintiff as to note No. 2, upon the claim that it was community property, and, therefore, Anna B. Nuckolls was not a holder thereof in due course, and, furthermore, that after the note was assigned to Anna B. Nuckolls, Marshall Nuckolls acted as her agent in charging, allocating, and demanding usurious interest.
We shall first consider the contention that Anna B. Nuckolls was not a holder in due course. As we have seen, the court expressly found that plaintiff became the holder of said note without any actual notice of any infirmity therein. The only showing under which she could be held to have received constructive notice would be that, as the note was the *284 community property of herself and husband, notice to him would be imputed to her. In other words, appellants contend that Anna B. Nuckolls had constructive notice that the note was usurious, and therefore she was not a holder in due course. Section 3137 of the Civil Code provides that: “To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.” In the case of Merced Security Sav. Bank v. Bent Bros., 207 Cal. 652, 656 [279 Pac. 765], we find this section cited and followed in the following language: ‘To constitute notice of an infirmity in the cheek of the appellant, or defect in the title thereto of the Farmers & Merchants National Bank, the respondent must have had actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith. (Civ. Code, sec. 3137.) The check was complete and regular upon its face, and it had not been previously dishonored. It was taken by the respondent in good faith and for valuable consideration, passing by reason of the settlement for the balance due on the clearances on September 18th, and respondent had no notice of any defect in the title of the negotiating bank.” The following cases contain similar statements of the law: Goodale v. Thorn, 199 Cal. 307, 314 [249 Pac. 11]; James Mills Orchard Co. v. Bank of America, 137 Cal. App. 299, 305 [30 Pac. (2d) 626, 32 Pac. (2d) 342]; Ross v. Title Guarantee Co., 136 Cal. App. 393, 399 [29 Pac. (2d) 236]; Drukker v. Howe & Haun Investment Co., 136 Cal. App. 437, 442 [29 Pac. (2d) 289].
There is nothing in the findings which would indicate that Anna B. Nuckolls had actual knowledge of any facts that would put her upon inquiry as to whether the note was usurious or indicated that in taking the note she was acting in bad faith. On the other hand, the whole tenor of the findings of fact is that she acted innocently and in perfect good faith in accepting the note as a part of her share of the community property. The record shows that at the time of the divorce the parties were the owners of community property of the reasonable value of over two hundred and seventy thousand dollars, and that in the settlement she received only *285 a fair and equitable division thereof. It does not stand to reason that if she had knowledge of any fact that would cause her to question the validity of said note she would have accepted it as part of her share of the community property instead of other property of the community of unquestioned validity. We are, therefore, of the conclusion that Anna B. Nuckolls is a holder for value and in due course of said promissory note No. 2. The same conclusion applies to all the other obligations of Horatio G. McMillan which she held and which are involved herein. None of them showed on its face that it was usurious.
We now come to the further contention of appellants that after note No. 2 and also the other obligations upon which it is claimed usurious interest was collected, were assigned to Anna B. Nuckolls, Marshall Nuckolls acted as her agent .in collecting usurious interest upon these obligations and that the acts of her agent rendered the transactions usurious.
Finding No. 9 reads as follows: ‘ That it is true that after the 26th day of November, 1928, said defendant, Marshall Nuckolls, for himself and as agent for plaintiff, Anna B. Nuckolls, the subsequent assignee of said note ‘No. 2’, charged, allocated and continued to demand from defendant, Horatio G. McMillan, and Lilian McMillan interest at semi-yearly intervals upon the principal sum of said note ‘No. 2' and upon the interest accruing thereupon after the taking of said note. ’ ’
Similar findings were made as to the other obligations on which usurious interest was charged and demanded. It will be noted that the language used in the finding is that Marshall Nuckolls “charged, allocated and continued to demand from defendant . . . interest at semi-yearly intervals upon the principal sum . . . and upon the interest accruing thereupon after the taking of said note.” It will be further noted that while the court found that Marshall Nuckolls, as the agent of his wife “charged, allocated, and continued to demand” interest upon the interest, there is no finding that he paid said illegal interest, or any part thereof, to his wife. We have carefully gone over the voluminous findings of the court, and we are unable to discover any finding therein that Marshall Nuckolls paid any part of the usurious interest to Anna B. Nuckolls, his wife. Furthermore, the findings compel the inference that Anna B. Nuckolls did not assent to or know *286 that any usurious interest was being charged or collected by Marshall Nuckolls. The transaction was not therefore rendered usurious by the acts of her agent in making an excessive and unlawful interest charge. (Vaughan v. Peoples Mortgage Co., 130 Cal. App. 632, 641 [20 Pac. (2d) 335]; Niles v. Kavanaugh, 179 Cal. 98, 100 [175 Pac. 462, 1 A. L. R 831]; St. John v. Fowler, 229 N. Y. 270, 273 [128 N. E. 199]; Chicago Fire-Proofmg Co. v. Park Nat. Bank, 145 Ill. 481 [32 N. E. 534, 535]; Franzen v. Hammond, 136 Wis. 239 [116 N. W. 169, 128 Am. St. Rep. 1079, 1082, 19 L. R. A. (N. S.) 399]; Freedman v. Katz, 246 Mich. 296 [224 N. W. 325, 326, 63 A. L. R. 831, 834]; New York Mortgage Co. v. Garfinkle, 231 App. Div. 327 [247 N. Y. Supp. 313, 315, 316].)
A few excerpts from these authorities will serve to clarify this rule. In the Niles v. Kavanaugh, supra, case, this court held that “a payment to an agent of the lender is, in .effect, a payment to the lender himself. But where th'e lender is in no way interested in a charge, or connected with it, the transaction is not to be denounced as usurious ’ ’. In Franzen v. Hammond, supra, the Supreme Court of Wisconsin stated the rule in the following language: “It is not within the apparent scope of a legitimate business agency to violate the law. So where an agent loans money, exacting a bonus for himself, the presumption is rather that it is without the knowledge of the principal than with such knowledge.” The Supreme Court of Michigan in Freedman v. Katz, supra, after reviewing the authorities upon this question, stated the conclusion as follows: “The great weight of authority is that a loan is not rendered usurious by the lender’s agent charging the borrower, for his own benefit, a commission or bonus for procuring the loan, in excess of the maximum legal rate of interest, where such charge is made without the lender’s knowledge or consent, either expressed or implied, and is not ratified or shared by him.” In Vaughan v. Peoples Mortgage Co., supra, the rule is concisely stated in the following language: “Where an individual wishes to invest money through an agent, the integrity of the loan is not affected by the act of the agent in charging usury, unless the lender has knowledge of the transaction or assents to it or receives some benefit from it.” Our conclusion from the foregoing discussion and citation of authorities is that the act of her agent in collecting usurious interest without her knowledge or consent *287 did not render the transaction usurious as to Anna B. Nuckolls where no part of such usurious interest was received by her.
The second point raised by appellants concerns only the appellant General Motors Corporation. This appellant holds an assignment by Horatio G. McMillan of his interest in said trust estate to secure the payment of $2,980.37 and interest. The date of this assignment is May 3, 1930. After this assignment was executed and delivered and notice thereof served upon the Bank of California, the trustee of the trust estate, McMillan, on June 5, 1930, made the assignment of his interest in said trust estate to secure the payment of said promissory note of $6,000 as stated Shove. No notice of the assignment to the General Motors Corporation was given to the plaintiff or to Marshall Nuckolls, and when dividends were paid by the bank to Marshall Nuckolls he applied a sufficient amount of these dividends at the special instance and request of Horatio G. McMillan to the payment of said promissory note of $6,000. Appellant contends that this money should have been paid on the interest due on said $30,000 promissory note thereby reducing the amount of interest due thereon. The trial court found that said $6,000 note had been paid in full. No claim is made that either plaintiff or Marshall Nuckolls did not act in the matter in perfect good faith. It cannot be questioned that the lien of General Motors Corporation was prior to that securing the $6,000 note, and had General Motors Corporation notified plaintiff of its lien and directed the payment of said dividend to the amount due on the $30,000 note, its lien on said funds would have been preserved, but no such notice was given to the plaintiff. As a result of this lack of notice and at the instance and request of the debtor these dividends were applied to the payment of the $6,000 note. The situation here is much like that shown to have existed in the ease of Anderson v. Northwestern Trust Co., 184 Minn. 200 [238 N. W. 164], In its decision of that ease, the court ruled as follows: “So payments and application thereof were facts accomplished and made in accordance with the directions of the debtor and under the law applications made were rightful and legal when made. The then undisclosed equities, if any, of the plaintiff would not overturn what had rightfully been done. In Pond & Hasey Co. v. O'Connor, 70 Minn. 266 [73 N. W. 159,160, 248], this court *288 said: ‘It is the rule that the application once rightfully made by either party is conclusive and final. Also that the law will not disturb an application once made by the parties. ’ ” A reasonable application of this rule to the facts in the present case renders it necessary to hold that as the funds in question were applied according to the agreement between the debtor and the creditor without any knowledge on the part of the creditor of the equities of a third party, “the law will not disturb an application once made by the parties”.
The judgment is affirmed.
Langdon, J., Edmonds, J., Shenk, J., and Waste, C. J., concurred. °
Rehearing denied. Shenk, J., and Edmonds, J., voted for a rehearing.