BELAND et al. v. ANHEUSER-BUSCH BREWING ASSOCIATION, Appellant.

[157  593]
[86a  381]
[157  593]
e171  ²688
175  ²  42

Division One, June 30, 1900.

1. **Promissory Note:** DECEPTION AS TO CONSIDERATION: CANCELLATION. A note executed by plaintiffs under false representations by the agent of defendant that they were indebted to defendant in the amount thereof, whether intentionally made to deceive or not, should be cancelled and the deed of trust given to secure the same satisfied.

2. ———: ———: ———: ESTOPPEL: CASE STATED. Plaintiffs as sureties executed the bond of one Kennedy for $2,000 conditioned that they would pay for all beer and other merchandise bought of defendant after the execution of the bond. At that time Kennedy was indebted to defendant in the sum of $1,777.80, and he afterwards bought goods amounting to $1,423.75, and paid on account of such purchase $1,302.70. Afterwards defendant's agents represented to plaintiffs that Kennedy had "used up the full amount of his bond, or nearly so" and demanded a note and security for the amount. The plaintiffs thereupon requested said agents to get a statement from Kennedy showing the exact amount of his indebtedness since the execution of the bond, and in a few days said agents produced a statement signed by Kennedy acknowledging in general terms his indebtedness to defendant to be $1,873.85, without stating when the indebtedness or any part of it accrued, and this statement said agents read to plaintiffs and represented that the amount named therein had accrued under and was covered by said bond, which statement plaintiffs accepted as true, and relying thereon executed a note for $1,873.85 due in six months and a deed of trust on land to secure the same. At the execution of the note Kennedy owed defendant $91 for goods bought since the execution of the bond, and at that time plaintiffs paid defendant's agents $100, but before the maturity of the note plaintiffs wrote to Kennedy to know the amount of his indebtedness since the execution of the bond, and receiving no enlightenment from him, paid the interest, and secured an extension for one year, and then employed an attorney to investigate the account, and ascertaining that they had fully paid their obligation under the bond, brought this suit to set aside the deed of trust and cancel the note. *Held*, that equity will cancel the note and direct a satisfaction of the deed of trust, for the same reason that a defense of want of consideration would defeat any attempt by defendant to recover at law the amount of the note. *Held*, also, that there is no estoppel in the case, since plaintiffs made no representations and did no acts which caused defendant to act to its own injury. *Held*, also, that the payment of the interest, and the extension of the time of payment, even though such acts were done after plaintiffs had been informed that the note had been obtained by deception and fraud, were no recognition of the validity of the note, nor a ratification of the obligation therein.

3. **Void Note: RATIFICATION: PAYMENT.** The voluntary ratification, by the payment of interest or otherwise, of a note that is void for want of consideration, after a knowledge of the fact that it is void has come to the maker, does not make it a valid note, nor place the maker under any obligation to the payee to pay it.

4. **Ratification: UNILATERAL CONTRACTS: WANT OF CONSIDERATION.** The presumption which the law indulges in favor of contracts involved in fraud at their inception, that they will be carried out notwithstanding the fraud if not repudiated in a reasonable time after the discovery thereof, does not apply to unilateral contracts, but only to those mutual in their obligations.

*Transferred from St. Louis Court of Appeals.*

AFFIRMED.

*Chas. Nagel* and *Jas. R. Vaughan* for appellant.

(1) If there was any mistake at all in regard to the matter, it was purely the negligent mistake of the plaintiffs themselves. Neither Mr. Schoeffel nor Mr. Nicoud knew the date of the bond and did not pretend to know anything of its date. The Belands knew more about it than Schoeffel, and if they did not the means of full information was easily within their reach and they should have sought for it and obtained it. Courts of equity have something other to do than overhauling and making over contracts for people who are too negligent or indifferent to look after their own rights. That Beland had information to put him upon inquiry there can be no doubt. If he did not know the facts at the time, all that was necessary was to call upon the company's agent at Springfield, examine Kennedy's books, or write a letter to the association at St. Louis asking for a statement. To enforce any other doctrine would be to encourage culpable negligence. Brown v. Fagan, 71 Mo. 563; Mateer v. Railroad, 105 Mo. 320. While fraud in the procurement of a note may be ground for equitable relief, such relief is granted only when it is made to appear that the complainant himself is free from negligence. Sanderson v. Voelcker, 51 Mo. App. 328. The party guilty of the fraud must make the representations "as of his own knowledge," as distinguished from

"mere matter of opinion or general assertion," or statements made "upon the unverified and unexamined opinion of others;" or made "from what he heard," or "as upon information." Hamlin v. Abell, 120 Mo. 188; Dunn v. White, 63 Mo. 181; Dulaney v. Rogers, 64 Mo. 201; Lynch v. Trust Co., 18 Fed. Rep. 486; Bullitt v. Farrar, 18 Am. St. Rep. 485; Lewis v. Land Co., 124 Mo. 687; Cooley on Torts (2 Ed.) 570. (2) The respondents are not in a condition to avail themselves of the alleged fraud, should fraud be granted by appellants. Their silence and delay and recognition of the contract as valid, after they were advised of all the facts which go to make up the alleged fraud, will defeat their action. They waited until after the note became due; then obtained an extension of one year, having already had an extension of six months on one interest payment; paid all interest due up to March 28, 1896, or at least made an interest payment of all interest due on that day, and in no way repudiated the contract until this suit was brought August 27, 1896. The law requires a party, upon the discovery of a fraud, or of any of the events which go to make it up, or give the right to rescind, to act at once and repudiate the transaction, and if he does not so repudiate, the law declares for him that he intends by his non-action to abide by it. Hart v. Hamblin, 43 Mo. 171; Estes v. Reynolds, 75 Mo. 563; Taylor v. Short, 107 Mo. 384; Lewis v. Land Co., 124 Mo. 687. Silence and delay will alone amount to an affirmance of a voidable contract. Johnson-Brinkman Com. Co. v. Railroad, 52 Mo. App. 407; Am. Ins. Co. v. Neiberger, 74 Mo. 167: Dougherty v. Stamps, 43 Mo. 247; Steinberg v. Ins. Co., 49 Mo. App. 265.

*R. V. Bowden* for respondents.

(1) "Where a party intentionally, or by design, misrepresents a material fact, or produces a false impression, in

order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him," equity will relieve. This is elementary. 1 Story's Eq. Jur., sec. 192. (2) "And even if a party innocently misrepresents a material fact by mistake, it is equally conclusive, for it operates as a surprise and imposition upon the other party." 1 Story's Eq. Jur., sec. 193; Bispham's Equity, secs. 206, 218; Smith v. Patterson, 53 Mo. App. 72. (3) Where a contract has been induced by innocent but substantial misrepresentation, equity will relieve against it. Sachleben v. Heintze, 117 Mo. 527. (4) If a party make misrepresentations calculated to mislead, and the one to whom they are made acts upon them to his injury, the contract will be relieved against, and that too whether the party misled had other means of knowing or not. 1 Bigelow on Fraud, pp. 523, 528; Wannell v. Kem, 57 Mo. 478. (5) And the matter of contributory negligence can not enter into it. 1 Bigelow on Fraud, *supra;* Caldwell v. Henry, 76 Mo. 254; Bank v. Hunt, Id. 439; Wannell v. Kem, 57 Mo. 478; Koontz v. Bank, 51 Mo. 275; Dobson v. Winner, 26 Mo. App. 329; Lyle v. Shinnebarger, 17 Mo. App. 74. (6) The vigilance of plaintiffs is not a question, neither is it affected by the question as to whether or not the representations which induced the giving of the note and trust deed were fraudulent or innocent. The question is as to whether or not under a mistaken idea something has been given defendant that was not its due. Dobson v. Winner, and Lyle v. Shinnebarger, *supra,* are directly in point. (7) A party is not bound by acquiescence when he has not full knowledge of the facts. Bispham's Equity, sec. 259; Pierce v. Wilson, 34 Ala. 596; 12 Am. and Eng. Ency. of Law, 605. (8) Payment after discovery of the facts would not validate the note in this case, same being obtained without consideration. Bank v. Schnur, 57 Mo. App. 176. (9) The burdens of this contract are unilateral,

plaintiffs · bearing them. Defendant gave nothing, waived nothing, did nothing, and has lost nothing. Hence the reason for strict promptitude fails, and the rule of contracts carrying mutual obligations does not apply.

ROBINSON, J.—By this equitable proceeding plaintiffs seek to have cancelled a certain note executed by them to defendant on the twenty-ninth of September, 1893, and to have satisfied the record of a deed of trust covering certain real estate belonging to plaintiffs, given to secure said note.

The petition averred that the plaintiffs had become sureties on a bond, to pay for beer and other supplies bought by one Joseph C. Kennedy of the defendant; that Kennedy afterwards became insolvent and unable to pay his debts, and the defendant fraudulently represented to plaintiffs that the indebtedness of Kennedy which he was unable to pay, accrued after they became such sureties on said bond; that the bond provided for the payment for beer, etc., which Kennedy should buy of defendant after its execution; that on account of defendant's representations as to when the indebtedness accrued, plaintiffs were induced to give a note and deed of trust for said indebtedness, when in fact it all accrued, except a small amount, before they signed the bond; that when plaintiffs executed the note and deed of trust aforesaid, they paid defendant $100 in cash, and that since then, and prior to the discovery by plaintiffs of the real facts of the case, they had paid defendant on said note executed by them the further sum of $180.84; that said two sums paid by them to defendant exceeded the amount of their obligation under the bond by $189.79. The petition contained a second count at law, setting forth the same facts as in the first count, and averred that plaintiff had overpaid the amount they were obligated to pay for Kennedy in the sum of $189.79, for which they asked judgment. The answer filed by defendant was a

general denial.   The trial court found the issues in favor of plaintiffs, and rendered its judgment accordingly.   Motions for a new trial and in arrest of judgment were filed by defendant, which being overruled, the case was taken on appeal to the St. Louis Court of Appeals, and by that court was ordered transferred here for final disposition, for the reason, as expressed in the order, "that title to real estate is involved.".

The facts show that one Joseph C. Kennedy for some time prior to April 26, 1893, had been engaged in the saloon business in the town of Monett in this State, and as such had been the agent and representative of the defendant herein, the Anheuser-Busch Brewing Association of St. Louis, for the sale of its beer in said town of Monett; that on said twenty-sixth of April, Kennedy as principal and these plaintiffs as sureties executed and delivered to defendant their bond in the penal sum of two thousand dollars, conditioned that said Kennedy would pay for all beer and other merchandise of like kind, ordered and bought of the defendants after the execution of said bond; that after said date and prior to the twenty-eighth day of September following, Kennedy purchased beer and other goods of defendant to the amount of only $1,423.75 and that he paid on account of said purchase the sum of $1,302.70, which had been duly credited thereon.   It also appears that prior to the time plaintiffs executed the bond aforesaid with Kennedy, that Kennedy had become indebted to defendant on account of beer previously purchased in the sum of $1,777.80.   Of this last indebtedness the plaintiffs herein had no particular knowledge, although they say they heard that Kennedy was owing defendant at that time something on account.   The evidence further shows that during the month of August following, one B. S. Schoeffel, a local agent of defendant residing at Springfield, called upon the plaintiff Louis Beland (who is

the father of the co-plaintiffs and who represented them throughout the entire transaction which resulted in the execution of the bond in the first instance and afterwards the note and deed of trust in controversy) at the blacksmith shop of the Frisco Railway Company in said city, where the said Louis Beland was then working, and then and there stated to him that "Kennedy had used up the full amount of his bond or nearly so," and that the company wanted a settlement, and that he came to notify him (Beland) as one of the bondsmen of the fact, and that the company would expect him to make it good. The plaintiff Louis Beland at that time stated that he did not think Kennedy had become indebted to defendant that much under plaintiff's bond, to which Schoeffel replied "that was his information from the St. Louis office." It was then agreed that the matter should be deferred until the plaintiff Louis Beland should return from a contemplated trip to Chicago. After Beland's return he went to see the agent Schoeffel as he had agreed, and again expressed his doubts as to the amount of Kennedy's indebtedness to defendant since the execution of the bond by himself and co-plaintiffs with Kennedy, and again Schoeffel replied, "That is the statement they [meaning the defendant company] gave me, and I believe it is right." Schoeffel, at neither of the two meetings above mentioned, gave to Beland the exact amount claimed under the bond on account of Kennedy's indebtedness to defendant, but simply stated that "Kennedy had about used up the amount of the bond and that there was nothing for him (Beland) to do but give a note and security for it."

At the last interview Beland demanded that Schoeffel get a statement from Kennedy, showing the exact amount of his indebtedness to defendant since the execution of the bond, and Schoeffel replied that Mr. Nicoud, the traveling auditor of the defendant company, would be in Springfield in a few

days, and that he would have a statement from Kennedy. Within a few days Nicoud came to Springfield, bringing a statement signed by Kennedy acknowledging in general terms his indebtedness to defendant in the sum of $1,873.85, without stating when the indebtedness or any portion of it accrued. With this statement in hand Schoeffel and Nicoud called upon Beland and read it to him and represented that the amount named therein had accrued under and was covered by plaintiff's bond. Beland without further investigation, accepted said statements as true, and relying upon them executed the note and deed of trust in controversy, and afterwards procured his son and daughter to sign the same with himself.

Upon the note so given the plaintiff, Louis Beland, paid one hundred dollars on the day of its execution, and afterwards the sum of $181.42. When the note become due, according to its terms, an extension of one year was asked by the plaintiff Louis Beland, which was granted by the defendant, but before the time for the maturity thereof under the extension had arrived, the plaintiffs had repudiated the entire transaction and begun this proceeding to have the note and deed of trust cancelled. This is in general an outline of the facts. Other details will be given during the course of the opinion as may become necessary.

Upon all the fact, as said above, the trial court found the issues in favor of the plaintiffs, and made its order that the note be cancelled and surrendered to them, and that an entry of satisfaction on the record of the deed of trust be made, etc. Under any and every possible phase of the testimony, the judgment of the trial court was for the right party. If it be conceded, as contended by appellant, that no intention was shown on the part of Schoeffel and Nicoud, or either of them, as agents of defendant, to deceive the plaintiffs, or to misrepresent the condition of the account of Kennedy with

the defendant, or of the amount thereof upon which plaintiffs were liable by reason of having signed the bond with Kennedy on the twenty-sixth day of April, 1893, the fact remains that plaintiffs were deceived, and by reason thereof executed the note and deed of trust in controversy to defendant, to secure an indebtedness for which they were in no wise liable, if we give them credit for the one hundred dollars that they gave to defendant on the day the note and deed of trust were executed, or if that item is ignored in that it followed after the execution of the note and deed of trust, then they gave their note and deed of trust for an amount in excess of their true liability to defendant on the bond in the sum of $1,782.80, and to that extent the note and deed of trust would be wanting in consideration. Since the date of the execution of the bond by plaintiffs, with Kennedy, to secure the payment of all indebtedness for goods to be sold by defendant to Kennedy after that date, there remained due from Kennedy to defendant, only an actual balance of $91 when the note and deed of trust were taken for the amount of $1,873.85.

If by the indulgence of a superabounding charity the court should be induced to conclude from the testimony that neither Nicoud the auditor of the defendant company, nor Mr. Schoeffel the local agent of defendant at Springfield (who had been instructed at the beginning of his work by Mr. Clauss, defendant's general manager at St. Louis, "to approach them [plaintiffs] in a diplomatic way"), knew the true condition of Kennedy's account with the defendant company, at the time negotiations were begun with plaintiffs, which resulted in the final execution of the note and deed of trust in controversy, but made all of their statements, as to amount and the condition of Kennedy's account with defendant, as upon information and not from personal knowledge, plaintiffs were none the less misinformed.

Have defendant's agents as innocent of false representations as you wish, the fact is still unavoidable, that you also have a deceived and misinformed plaintiff at the time the note and deed of trust in controversy was made, executed and delivered to the agents for the use and benefit of the defendant.

The plaintiffs were obligated to the defendant only in such a sum and to such an amount as Kennedy had failed to pay the defendant on account of goods purchased since the execution of the bond in April, 1893, and no reason is given or act shown to indicate that they intended to secure any other or different obligation, except as that intent is gained alone from the fact that a larger obligation is named in the note and deed of trust. While defendant's agents, who procured the note and deed of trust to be executed, made bold to deny that they knowingly and falsely represented to the plaintiffs of their own knowledge, that Kennedy's indebtedness to defendant since the execution of the bond was the amount of $1,873.85, they have failed to deny that plaintiff ever agreed to secure the amount of Kennedy's debts for which they were not liable under their bond.

In a case like the present, where no consideration is shown for the giving of the note and deed of trust securing same, that was executed by plaintiffs in excess of their obligation under the bond of date April 26, 1893, equity will relieve against their enforcement, or interfere to effect their cancellation and annulment, whether their execution was brought about through the fraud of the beneficiary or by mistake or inadvertence of the maker. Neither fraud or deceit, care or diligence, are governing elements in a case of this character. The sole inquiry is, was an error made by mistake of the parties, or by a mistake on part of the maker, conjoined with and induced in part by the fraud of the beneficiary or its agents?

If the note and deed of trust in controversy were made through a mistake of the fact, as to the amount of Kennedy's

liability to defendant, since plaintiffs executed with Kennedy the bond of April 26, 1893 (however that mistake was induced or brought about), the other undisputed and conceded facts of the case are such that the question of the negligence or want of negligence of the plaintiff became matters of no concern.

By reason of the transaction defendant parted with nothing; it waived no rights that it might otherwise have exercised to its advantage, had the mistake not been made; by reason thereof, it did no act to its injury, or from which injury might flow. By the giving of the note and deed of trust defendant's condition was in no way altered, except for the better to the extent of the payment of $189.79, made by plaintiffs on the note in excess of the amount they were obligated to pay on account of the bond.

By what process of reasoning, or under what rule of law, an act of negligence on part of the plaintiffs, which resulted alone to the good of defendant (if such plaintiff's failure to ascertain the true state of the account between Kennedy and the defendant, before signing the note and deed of trust in question, at defendant's solicitation, can be characterized) can be invoked to validate a worthless obligation, or to stay the hand of Justice in the effort to arrest its force and execution, we are at a loss to conjecture.

The doctrine of estoppel contended for by appellants is wholly inapplicable to the facts of this case. The plaintiffs did no act or acts, they made no representations or statements, upon which defendant acted, that caused a change for the worse in its relations to any of the original parties to the indemnity bond. Plaintiffs simply make a mistake in giving their note for more than they were obligated under the terms of the bond, according to defendant's view of the testimony, while on the other hand, if we take the view of the plaintiffs, the act was induced by the direct fraud and misrepresenta-

tion of defendant. In either view of the case, however, it would be a most extraordinary application of the equitable doctrine of estoppel, established to prevent fraud and injustice, to apply here in behalf of the defendant, for the purpose of preventing the interposition by plaintiffs of a harmless mistake, which unrelieved against, would result in the gross injustice of compelling plaintiffs to pay to defendant $1,777.81, a sum for which plaintiffs never received an iota of consideration, and on account of which transaction the defendant has parted with nothing of value.

If instead of this suit by plaintiffs to cancel the note and deed of trust, the defendant had begun an action to recover of plaintiff the amount of the note, can it be doubted that the defense of no consideration would be heard, and that, too, without regard to the negligence or want of prudence on part of these plaintiffs in failing to properly investigate into the matters and facts that led up to and resulted in the making of the note? If the law would defeat defendant in the attempt to enforce its demand on account of its want of consideration, equity should certainly aid the plaintiffs by the cancellation of that obligation, made without consideration, and under a mistaken view of facts, which it must, at least, be said, was induced in part by the "diplomatic way" the plaintiffs were approached by defendant's agents. To relieve against such mistakes equity has full and ample power.

Appellant's further contention that plaintiffs' recognition of the validity of the note in controversy by making a payment thereon after the discovery of the mistake that led to its execution, and the long delay thereafter in instituting this action, is fatal to plaintiffs in this action, is also untenable under the facts of the case. In the first place, the evidence does not show that the plaintiff paid any part of the note after they were possessed of the full facts of the case.

During Christmas week, 1895, before the maturity of the note, the plaintiff, Louis Beland, had been told that the debt of Kennedy secured by this note and deed of trust, had not all been created during the life of the bond signed by plaintiff with Kennedy. He then called upon Kennedy, who was in Springfield at that time, and asked if that was true, and Kennedy answered in the affirmative, but on being pressed for the exact condition of Kennedy's account with the defendant, showing the amount due before the signing of the bond, and the amount created afterward, Kennedy claimed that he could not tell from memory but would look up the matter when he got home, and send a statement to him. After waiting a month or more for the statement and not getting it, Louis Beland then wrote to Kennedy in Monett for the promised statement, and received the reply that the books did not show anything by which he could make up the desired statement, and no statement was sent to plaintiff as promised.

Early in the month of March, Louis Beland again wrote to Kennedy, requesting that he give to him a statement showing the amount of his indebtedness to the defendant before and after the signing of the bond, and again received an answer, that he could give plaintiff nothing that would enlighten him. Under this confused and unsatisfactory state of facts, Louis Beland, on the twenty-eighth day of March, 1896, paid the interest due upon the note, and asked and was granted an extension thereon for one year. In April, Louis Beland again wrote to Kennedy for the full facts of the account, and getting no satisfaction regarding the matter, employed an attorney to investigate the facts for him, and it was not until June of that year that the true state of the account was made known to him. Information to Louis Beland that plaintiffs had made to defendant a note for more than they were liable on account of having signed Kennedy's bond, or

that part of defendant's account against Kennedy which they had settled had been created before the execution of the bond, was far short of information that the note was wholly without consideration, or that plaintiffs were not justly indebted to defendant thereon in some amount.    In fact, Kennedy's entire conduct was such, when addressed and written to by Louis Beland, as to impress him with the fact that plaintiffs were liable to defendant for part of the sum named in the note, and the plaintiff, Louis Beland, must have so understood it at the time he paid the interest in March, and took the extension on the note.    Plaintiffs' information from Kennedy was not such as to have justified their entire repudiation of the note at that time, nor can the act of making the interest payment by said Louis Beland on the note, be treated as a recognition by plaintiffs of its validity, after they were advised of all the facts which went to show its invalidity.

The payment of interest on the note in March was no more a recognition of its validity by plaintiff, then, than was the signing of the note on the twenty-eighth of September, 1893, a recognition of the amount of their obligation to the defendant under the bond, which they had previously signed with Kennedy.    In both instances plaintiffs were deceived and kept in the dark, as to the full and true facts of the case.

But if it be said that plaintiffs did pay interest on the note in controversy, after they had been informed as to their non-liability under the bond which they had signed with Kennedy, and after they had been informed that the note had been obtained by deception and fraud, still that act would not amount to a ratification of the obligation expressed in the note, which plaintiff could not now avoid.    The note was given without consideration, in the first instance, and for that reason alone could have been repudiated at any time. When the interest due on that note was paid by plaintiff

at its maturity, no consideration moved to them by their act, and no inconvenience was suffered by defendant on account thereof. The voluntary ratification of an instrument that is void for want of consideration after a knowledge of that fact gives to the instrument no virtue that it did not possess in the beginning, or endow it with a vitality of which it was wanting at its creation. Consideration is as essential an element in an act of ratification in a case of this character as it was in the act of first creation.

Likewise the question of ratification implied by law against one who fails to repudiate a transaction in proper time after the discovery of the fraud that led to its creation has no application to an agreement made without consideration in the first instance, as the note or deed of trust in question. The law by no presumption can make that binding upon a party, which that party by direct agreement could not make binding in law against himself. The presumption which the law indulges in favor of contracts involved in fraud in the first instance, that they will be carried out notwithstanding the fraud if not repudiated in a reasonable time after the discovery thereof, does not apply to those unilateral in their burdens, but only to those mutual in their obligations. No amount of knowledge, and no delay in announcing its acquisition, by way of repudiating the obligation of a contract, will raise the presumption against the defrauded party, making the contract without consideration that he is to abide by its result. The defendant in this action gave nothing, promised nothing, and waived nothing, hence the reason for strict promptitude, as under the rule governing contracts carrying mutual obligations is wanting and has no application whatever. The judgment of the trial court was for the right party, and will be affirmed.

All concur.