## HAMMOND v. TATE.

### No. 1360.

Circuit Court of Appeals, Tenth Circuit.

March 31, 1936.

LaRue Royce, of Salina, Kan. (C. W. Burch, B. I. Litowich, L. E. Clevenger, and E. S. Hampton, all of Salina, Kan., on the brief), for appellant.

Thomas Amory Lee, of Topeka, Kan. (C. A. Spencer and J. H. Jenson, both of Oakley, Kan., on the brief), for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

The Central National Bank of Ellsworth, Kan., suspended business on March

25, 1931, and was placed in receivership. The receiver instituted this action against M. J. Tate to recover an alleged balance on a promissory note of $10,000, dated January 28, 1931, due sixty days after date, executed by M. J. Tate payable to the order of W. L. Tate and by the latter indorsed in blank and delivered to the bank, it being alleged that such note was thus indorsed and delivered as collateral security for a promissory note of $9,000 which W. L. Tate gave to the bank bearing the same date and maturing at the same time. Payments were made on that note which reduced the amount due to $5,810.14 and judgment was prayed for that sum with interest.

Defendant answered that W. L. Tate was his brother; that during 1931 and prior years W. L. Tate was engaged in the cattle business near Brookville, Kan., and usually pastured about 400 head of cattle there; that his herd had become depleted and that upon request of the bank, the note in suit was executed solely and exclusively as accommodation for use as collateral in securing future advances of money .from the bank for the purchase of needed cattle; that the bank failed to lend or advance any money to W. L. Tate for that purpose; that it acquired possession of the note with full knowledge of the purpose for which it had been executed; and that there was an entire absence and failure of consideration for its execution and delivery.

The receiver replied that the note was executed and delivered to W. L. Tate with full authority on his part to use it for the purpose to which it was devoted; that with full knowledge that it had been pledged as collateral for the note of $9,000, defendant ratified its use by making payments thereon and otherwise; and that he was therefore estopped to deny liability upon it.

The case was tried to a jury. Defendant assumed the burden of proof and submitted evidence tending to establish the facts alleged in the answer. At the conclusion of his evidence, the receiver moved for a directed verdict. The motion was overruled and the receiver elected to stand upon the record made. The issues were submitted to the jury and a verdict was returned for defendant. Judgment was entered and the receiver appealed.

The first contention advanced is that the motion for a directed verdict should have been granted because the note was executed for the purpose of strengthening the credit of W. L. Tate at the bank in order that the bank would continue to finance him in the cattle business during the year 1931; that it was used for that purpose and was not wrongfully or improperly pledged as collateral to the note of $9,000. It appears from the record that W. L. Tate was engaged in the cattle business; that for about ten years prior to 1931 it had been his custom to buy and feed between 300 and 400 head of cattle; that the bank had financed him in that business; that in the fall of each year he went to the bank and arranged to draw a check for the purchase price of the cattle; that the bank honored the check and he thereafter gave a note for the amount payable to the vice president of the bank and a chattel mortgage on the cattle to secure it; that the bank discounted the note with an outside agency and placed the amount to the credit of his checking account; that in November or December, 1930, he talked with the president of the bank in the usual way about the purchase of some cattle and was told that due to his financial condition, the bank could not furnish the money without some additional security and it was suggested that defendant aid him in that respect. Pursuant to that suggestion, W. L. Tate communicated with defendant and on or about December 18th the two went to the bank and conferred with the president. He stated to them that the bank could not supply the money necessary to purchase the needed cattle unless additional security was furnished. Defendant inquired and was told that $25,000 or $30,000 would be needed to make the purchase and the president asked defendant if he could not accommodate his brother by giving a note of $10,000 to be used as security in connection with the furnishing of the money for that purpose. Defendant replied that he desired time to consider the matter. It was then suggested that he furnish the bank a financial statement and that was done. W. L. Tate then owed the bank $10,944, evidenced by two past-due notes which represented an accumulation of several years. Nothing was said in the conference about defendant furnishing collateral for that obligation. Instead the president stated that he thought he could arrange with an unnamed individual to take care of it. The negotiations with defendant had reference to money to be thereafter furnished for the purchase of live stock. After departing from the bank and later that day or on the next, defendant signed a note in blank and delivered it to his

brother with the statement that it should not be filled out for more than $10,000. He was a train conductor in the service of the Union Pacific Railroad Company and was not indebted to the bank nor to his brother in any sum. On January 28, 1931, W. L. Tate executed the note for $9,000 due sixty days thereafter and at the same time the president of the bank filled out the note which defendant had previously signed; and W. L. Tate indorsed and delivered it to the bank. He also executed a note for $3,500 and gave a chattel mortgage on some live stock to secure it. After a discount had been deducted and the old notes were canceled, a balance of $1,392.11 resulted from the transaction and it was placed to his credit. The bank did not furnish any money with which to purchase cattle in 1931 and when it suspended business, the note in suit was found pinned to the one for $9,000. It was soiled and worn, indicating that it had been carried in one's pocket. The other note was clean and without evidence of wear. Some time after the bank closed the two brothers signed a joint note for $9,000, dated March 28, 1931, and due on demand. The receiver stated to them at the time that there would be no responsibility on it; that it was merely for the purpose of getting the affairs of the bank started. No recovery is sought on that note. The first note of $9,000 contains the statement that the one for $10,000 was placed as collateral to it and the last note of $9,000 contains a like statement that both of the former notes were deposited as security for it.

Defendant made five payments to the receiver in the aggregate sum of $5,300 and in letters directing application of the remittances he made repeated references to his note to the bank. He stated that he did not have any intention of allowing it to run indefinitely and that he would make every effort to pay it; and by way of adjustment he suggested a cash payment of 75 per cent. in full settlement of the asserted amount due, but he testified that at the time he wrote the letters he did not know that his note had been pledged as collateral security for a debt which his brother owed the bank prior to December 18th. The president of the bank died before the trial and no one connected with it at the time of the transaction testified.

 If the note was executed with the understanding and condition that it would be used solely and exclusively as collateral security for money to be thereafter advanced by the bank for the purchase of cattle and the bank acquired possession of it with knowledge of that fact and failed to furnish any money for that purpose, the bank did not acquire such title thereto as would authorize its use for another and different purpose. Quebec Bank v. Hellman, 110 U.S. 178, 4 S.Ct. 76, 28 L.Ed. 111. It is unnecessary to determine whether the facts establish lack of consideration or failure of consideration because the parties do not present that question and the governing principles of law here are the same whether it is one or the other. The evidence and its reasonable inferences clearly presented an issue of fact respecting the consideration for the note. The manner in which that issue was submitted to the jury is not drawn in question. The jury resolved it against the receiver and since the finding is supported by substantial evidence, it must stand undisturbed here. Robinette v. Sidener (C.C.A.) 33 F.(2d) 37; Woolworth Co. v. Davis (C.C.A.) 41 F.(2d) 342; Larabee Flour Mills Co. v. Carignano (C.C.A.) 49 F.(2d) 151; Frates v. Thomas (C.C.A.) 57 F.(2d) 535.

██ It is urged by way of further attack upon the judgment that even if the note was executed and delivered for the sole purpose of being used as collateral for the money to be thereafter furnished for the purchase of cattle and the bank with knowledge of that fact wrongfully used it for another purpose, defendant was required to disaffirm the transaction immediately upon learning that the note had been thus used and demand its return; that he failed to do so; that instead, he ratified such use by making payments and otherwise recognizing the instrument as a valid obligation; and that he is now estopped to deny liability upon it. In support of the contention, an effort is made to invoke the familiar doctrine that immediately upon learning of fraud which entitles one to rescind a contract, he must repudiate the transaction, announce his purpose to rescind, and thereafter adhere to that position; that he cannot recognize the contract as binding after discovering the fraud and later assert the right of rescission. That doctrine has no application here because the defense interposed to this note is not fraud with the resulting right to rescind. It is want or failure of consideration. Wrongful misuse is not an issue, except as that fact is intertwined with the contention

that the note was executed for a consideration which never passed or which passed and subsequently failed, and that in consequence the bank did not acquire such title as authorized it to use the note for another purpose. Consideration is an essential element to the validity of a promissory note, and it cannot be supplied by correspondence in which the maker refers to the note as his obligation. Neither can it be furnished by making payments. A note which is given without consideration in the first instance, or in which the consideration subsequently fails cannot be vitalized by references of that kind or by payments. Beland v. Anheuser-Busch Brewing Ass'n, 157 Mo. 593, 58 S.W. 1; Nesson v. Millen, 205 Mass. 515, 91 N.E. 995; Christensen v. Duborg, 38 Nev. 404, 150 P. 306.

Defendant did not make any misrepresentations concerning the purpose for which the note was given; he did not engage in any fraudulent conduct; and he did not mislead the bank in any manner. The bank acquired the instrument with notice of its purpose and defendant did not cause it to suffer detriment, nor to fail to protect its rights. He therefore is not estopped to plead want or failure of consideration. Welsbach Street Lighting Co. v. Wichita, 101 Kan. 452, 168 P. 1090; Cambridge State Bank v. Dwyer, 131 Kan. 148, 289 P. 423; Nesson v. Millen, supra; Federal Trust Co. v. Bristol County St. Ry. Co., 222 Mass. 35, 109 N.E. 880; Drukker v. Howe & Haun Inv. Co., 136 Cal.App. 437, 29 P.(2d) 289.

For these reasons, the judgment is affirmed.

PHILLIPS, Circuit Judge (concurring).

It is my opinion there was evidence which would have warranted the jury in finding that W. L. Tate, undertook, as agent for the defendant, to pledge defendant's $10,000 note to the bank as collateral security for W. L. Tate's $9,000 note, without authority so to do, and that defendant thereafter ratified the transaction. But it is further my opinion that under the evidence, both questions presented issues of fact for the jury.

Therefore, while I think the issue of ratification was involved, it is my opinion that the verdict of the jury was supported by substantial evidence and is conclusive on the receiver as to that issue. I therefore concur.