**Carolyn E. JACKSON, Plaintiff-Appellee,**

v.

**The City of KANSAS CITY, KANSAS, Defendant-Appellant.**

**No. 662–70.**

United States Court of Appeals, Tenth Circuit.

Sept. 16, 1971.

---

A. B. Howard, Kansas City, Kan. (Joseph A. Bukaty and C. W. Brenneisen, Jr., Kansas City, Kan., on the brief), for appellant.

Wm. E. Scott, Kansas City, Kan. (LaVone A. Daily, Donald W. Vasos, Kansas City, Kan., and Rick J. Eichor, Mission, Kan., on the brief), for appellee.

Before PHILLIPS, HILL and DOYLE, Circuit Judges.

HILL, Circuit Judge.

Appellee Jackson sued appellant, The City of Kansas City, Kansas, seeking recovery under provisions of K.S.A. 12–

201,[1] the "mob statute". Mrs. Jackson was awarded judgment in the amount of $20,000. Defendant appeals on the grounds that (1) plaintiff has not stated sufficient facts to bring the case within the mob statute; (2) the court erred in refusing to give defendant's requested instructions 2, 4 and 5; and (3) the court erred in instructing the jury as to the law in the case.

The factual background of this case is as follows. Mrs. Carolyn E. Jackson, a married, nineteen-year-old lady, was visiting her husband in St. Luke's hospital at 44th and Nichols Road, Kansas City, Missouri, on November 19, 1966. Leaving the hospital at approximately 9:40 p. m., Mrs. Jackson proceeded to her car in the hospital parking lot. There she was pulled from her car by a young man and forced into a waiting car. A gang of approximately five young men was here involved.

The gang drove Mrs. Jackson to 3825 Minnie Street, in Kansas City, Kansas. The structure at this address was locked. The gang forced open the door, and Mrs. Jackson was taken inside. The gang found someone in bed at this address; this person was ejected from the bed, and Mrs. Jackson was thrown on the bed. While restrained by members of the gang, Mrs. Jackson was raped approximately ten times by various unidentified males.

Fearing someone was watching through a window, the gang left this address and proceeded by car to another address in the Greystone area of Kansas City, Kansas. Mrs. Jackson was dragged and carried through a field to 1117 Springfield Street, where she was raped another five, six or more times. She was then again placed in a car with members of the group. Here she was subjected to further abuse when members of the gang alternately forced her to put their private parts in her mouth. The gang let Mrs. Jackson out in the area of 19th and Steel Road, in Kansas City, Kansas, and left her there. The time was approximately 11:50 p. m.; Mrs. Jackson's ordeal had lasted more than two solid hours.

The primary issue in this case is whether the assemblage of young men who subjected plaintiff to this appalling ordeal constituted a mob within the purview of K.S.A. 12–201. If this Court finds the jury's findings to be supported by substantial evidence, viewing such evidence in the light most favorable to the prevailing party below, this court may not disturb said findings on appeal.[2]

This Court has been unable to find any single definition of the word "mob". The word, of course, may be defined in the vernacular sense as "masses, rabble, a large disorderly crowd, a criminal set, gang."[3] Definitions of the word abound in Kansas cases dealing with the term in the vernacular.[4] A concise definition of the word in the statutory sense is " * * * an unorganized assemblage of many persons intent on unlawful violence, either to persons or property."[5] Another Kansas case defines mob as " * * * any collection of individuals assembled for an unlawful purpose, intending to injure any person by violence, and without au-

1. K.S.A. 12–201 Liability; what constitutes mob. All incorporated cities and towns shall be liable for all damages that may accrue in consequence of the action of mobs within their corporate limits, whether such damage shall be the destruction of property or injury to life or limb: Provided, however, That the number of persons that shall constitute a mob under this act shall be five or more.

2. Hammond v. Tate, 83 F.2d 69 (10th Cir. 1936).

3. Webster's Seventh New Collegiate Dictionary, 543 (7th ed. G. & C. Merriam Company 1961).

4. See Moore v. City of Wichita, 106 Kan. 636, 189 P. 372 (1920). The Kansas Supreme Court held it was not error for the trial court to give a definition other than that found in the dictionary for the word "mob".

5. City of Cherryvale v. Hawman, 80 Kan. 170, 101 P. at 994 (1909).

thority of law \* \* \*."[6] The mob statute was never intended to create a civil liability on cities for what may be spoken of as ordinary crimes. Of course, mobs frequently do commit crimes. But it is the mass action of a group, as distinct from the acts of a few bent on particular mischief, that imposes liability on cities under the statute.[7]

Plaintiff is not required to show that she was in the hands of a mob during the entire two hours plus of her ordeal. It is sufficient if the injury complained of was perpetrated by a mob which had assembled within the corporate limits of the municipality in question.[8] This court is not prepared to hold that the kidnapping of Mrs. Jackson from the hospital parking lot was done by a mob. This was apparently accomplished in a quiet and surreptitious manner. Had the matter stopped here, the defendant would not be liable. Five men, combining together to commit a crime without any public disturbance, is not a mob within the meaning of the statute.[9] Unfortunately, events did not stop there.

It would be unreasonable for this court to view the events which transpired after Mrs. Jackson's abduction as occurring in any manner but one creating "a public disturbance". Entry into the first dwelling was accomplished with some force; the person sleeping there was ejected. Mrs. Jackson was raped some ten times there. The reasonable inference is that men other than the members of the original gang were somehow attracted to the scene and participated in the ravishment of Mrs. Jackson. The gang itself seemed to recognize that some disturbance was being created, because one of the gang members noted that someone was apparently watching the scene through a window. Mrs. Jackson was then removed to another location to avoid detection. To gain entry into the second building, it was necessary to alternately drag and carry Mrs. Jackson across an open field. At this new location, Mrs. Jackson was again raped another five, six or more times. The inference is that additional men were attracted to the scene, and participated in the crime. Mrs. Jackson was then driven to another area of Kansas City and abandoned by the gang. The members of the jury are not required to view these facts as an isolated phenomenon. Forced entry into a dwelling by a gang, repeated rapes of a captive woman by some sixteen or seventeen men, and dragging and carrying the same woman across a field, are not accomplished without some degree of public disturbance. The jury was justified in finding that Mrs. Jackson was injured at the hands of a mob within the meaning of K.S.A. 12–201. As the jury's findings are supported by substantial evidence, said findings will not now be disturbed on appeal.

The secondary issue presented here concerns the instructions to the jury. Defendant alleges that the trial court erroneously instructed the jury as to the applicable law, and that the trial court erred in refusing to give several of defendant's suggested instructions. When the propriety of instructions given by the trial court is questioned on appeal, the charge is to be considered as a whole.[10] Where it appears on examination of the instructions as a whole that the jury has been fairly and adequately instructed, the requirements of law are satisfied.[11] This court does not find that the trial court erroneously instructed the jury as to the law in this case.

6. Blakeman v. City of Wichita, 93 Kan. 444, 144 P. 816 at 817 (1914).

7. Koska v. Kansas City, 123 Kan. 362, 255 P. 57 (1927).

8. Easter v. City of El Dorado, 104 Kan. 57, 177 P. 538 (1919).

9. Maus v. City of Salina, 154 Kan. 38, 114 P.2d 808 (1941).

10. Weeks v. Latter-Day Saints Hospital, 418 F.2d 1035 (10th Cir. 1969); Krieger v. Bausch, 377 F.2d 398 (10th Cir. 1967).

11. Id.

Read as a whole as well as individually, the trial court's instructions give an adequate explanation of the applicable law. Nor does this court find error in the trial court's refusal to give certain of defendant's suggested instructions. Five or more persons combining to commit a crime may constitute a mob, if accomplished through mass action in a boisterous and tumultuous manner.[12] Further, it is no defense to an action under the mob statute that the city had no notice in time to check the mob action. Indeed, inability of the defendant city to prevent injury is no defense.[13] The trial court properly refused the proffered defendant's instructions in question as not properly setting forth the applicable law.

Affirmed.

---

12. *Cf*. Blakeman v. City of Wichita, 93 Kan. 444, 144 P. 816 (1914).

13. City of Iola v. Birnbaum, 71 Kan. 600, 81 P. 198 (1905).