**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Loken FREED, Defendant-Appellant.**

**No. 71–1687.**

United States Court of Appeals, Tenth Circuit.

May 9, 1972.

Rehearing Denied June 1, 1972.

Robert G. Busch, Lakewood, Colo., for defendant-appellant.

William K. Hickey, Asst. U. S. Atty. (James L. Treece, U. S. Atty., Denver, Colo., on the brief), for plaintiff-appellee.

Before HILL, McWILLIAMS and BARRETT, Circuit Judges.

HILL, Circuit Judge.

Freed appeals his conviction for failure to report for and submit to induction into the armed forces in violation of 50 App.U.S.C. § 462(a).

The conviction stems from a complicated series of communications between appellant and the draft boards involved. Freed, a registrant of Local Board No. 4, Denver, Colorado, was given a pre-induction physical and found acceptable. On January 21, 1969, an Order to Report for Induction was mailed ordering him to report on February 17, 1969. On January 31, 1969, the Board received a Current Information Questionnaire form in which Freed indicated a new address in Aspen, Colorado. On the reverse portion of the form, he indicated what he felt was a disqualifying physical condition, an "acute lumbral sacral strain" which he said was caused by a recent skiing accident. He further stated a physician's statement would be sent the next week. On February 14, 1969, Freed had his induction transferred to Local Board No. 64, Aspen, Colorado. The Aspen Board, on March 18, 1969, is-sued its order to report for induction, setting March 31, 1969, as the reporting date.

Freed wrote the Denver Board on March 26, 1969, requesting a postponement of the March 31 report date assigned by the Aspen Board, referring to his back injury and stating the medical report had been delayed due to diagnosis having not been completed. On March 26, 1969, the Denver Board postponed his induction to April 25, 1969. In the accompanying letter, the Denver Board's executive-secretary requested that a doctor's statement informing of Freed's physical condition be returned within ten days. No letter was forthcoming, and the postponement expired. The Denver Board accordingly, on April 30, 1969, ordered appellant to report for induction on May 26, 1969. On May 23, 1969, Freed had the induction transferred to the Aspen Board which issued its order to report, designating July 16, 1969, as the report date.

On June 30, 1969, Freed wrote the Denver Board requesting postponement or cancellation of the July 16 reporting date, advising that he was to undergo knee surgery in the near future, and generally offering a dismal prognosis for his chance of recovery from the back injury. In reply, the Board stated a postponement would be considered only upon receipt of a letter from Freed's doctor describing appellant's condition, necessity for surgery, and capability to report for induction. They further informed Freed that non-receipt of the doctor's letter would oblige his reporting on the assigned date, and further that he would be expected to report for induction unless he received a written postponement from the Board. The Denver Board, on July 15, 1969, received a letter from Freed's physician regarding appellant's physical condition. This was forwarded to the Armed Forces Examining and Entrance Station (AFEES) which, after evaluation, determined it was no basis for a change in status and indicated there would be consultation upon induction.

Freed failed to appear for induction on July 16, 1969, and on July 28, 1969, the Board inquired as to his failure to report and advised that a consultation had been arranged concerning the injury. In response, Freed, by letter, expressed his opinion that the Denver Board, upon receipt of the physician's letter, would have either postponed induction or notified him that no postponement would be granted. He claimed his lack of knowledge of the Board's action justified his failure to report. Speculating that both he and the Denver Board were in error, he suggested the solution to the "misunderstanding" would be for the Board to schedule another physical examination before scheduling another induction date. The Board promptly replied that the induction order continued in full force and effect, that a medical consultation had been arranged for Freed at the AFEES, and that he was under a duty to comply with the order to report. The Board ordered Freed to report for induction on September 8, 1969.

Appellant transferred his induction to the Aspen Board on September 4, 1969. That Board then issued its order to report for induction designating November 19, 1969, as the report date. Freed failed to report on that date. The United States Attorney was notified and investigation ensued. On February 27, 1970, the Selective Service General Attorney received a telephone call from Freed stating he had not received his last order for induction and inquiring why he was the subject of an F.B.I. investigation. He was advised of his continuing obligation to report. The attorney told Freed to go to the Aspen Board to arrange a transfer of induction. Freed apparently never returned to the Aspen Board. On March 4, 1970, the Aspen Board mailed Freed an Order to Report for Induction, meal, lodging and transportation tickets. The letter was addressed to the listed address, that being the same address the Board had used in its previous communications with Freed. The letter was returned to the Aspen Board, having been unclaimed at the post office. Freed failed to report on March 26, 1970, and he was subsequently indicted, and tried and convicted by a jury for the failure to report on November 19, 1969.

At the sentencing proceeding, the trial court offered Freed the opportunity to avoid the jury finding of guilt and its concomitant life-long stigma by allowing himself to be inducted, with dismissal of the indictment in that event. Freed accepted the proffered commutation and reported for induction. He was found medically unsuitable and was rejected for military service. Having failed to be inducted, the trial court subsequently imposed a sentence of three years imprisonment.

The first point of error asserted by appellant is that the evidence which appellant submitted relating to his physical condition constituted facts beyond his control and not considered by the Board which would, if true, entitle him to a physical deferment classification. Appellant's reference to the applicable Army Regulation discloses a provision for rejection of persons having certain symptoms and disabilities in connection with a deviation or curvature of the spine, and for a history or findings of unstable or internally deranged joint. The physician's letter to the Denver Board discloses that after thorough examination of Freed the only significant diagnostic revelation was a bone spur on appellant's left thigh bone. Reference to the back curvature reveals there evidently was lordosis, but apparently with no great disabling effect.

 This Court's recent decision in United States v. Kirkpatrick, 446 F.2d 1371 (10th Cir. 1971), is dispositive. One seeking to obtain a reconsideration of a draft classification based on an asserted disqualifying change in physical condition under applicable Army Regulations must state that change in the strict terms of the Army Regulation. Failure so to state within those confines will not afford ample basis to assert error by the Local Board in failing to re-

open the registrant's file for review of his classification. The physician's letter submitted to the Denver Board could not be considered as stating disqualifying change in physical condition under Army Regulation 40–501.

■ Appellant next asserts error in the admission of his selective service file. This, he contends, is inadmissible as incompetent hearsay and violative of his Sixth Amendment right to confront the persons who made the entries in the file. Again, a recent decision by this Court negates any merit of this argument. In United States v. Downing, 454 F.2d 373 (10th Cir. 1972), we held a selective service file to be admissible under the Federal Official Record Act, 28 U.S.C. § 1733. We further held the admission of a letter contained in the selective service file was not violative of the confrontation clause of the Sixth Amendment. That determination was based on the high degree of trustworthiness reflective of its high probative value. Appellant does not raise any specific allegations concerning his file which would lead us to a contrary conclusion.

■ Freed next argues the non-receipt of the order of November 19, 1969, precludes conviction due to failure to show a willful and knowing failure to report for induction. Appellant asserts his failure to receive that order imposes upon the government the burden of showing he did receive notice of the order prior to the report date. Relying on United States v. Bowen, 414 F.2d 1268 (3d Cir. 1969), appellant asserts the presumed notice provision of 32 C.F.R. § 1641.3 does not satisfy the government's burden of proof of actual notice. In United States v. Kirkpatrick, supra, we approved the trial court's conclusion

that, based on the evidence, there was receipt of mailed communication from the Local Board. We further stated, at 1372, "32 C.F.R. 1641.3 states that the mailing of an order or blank by the Local Board to a registrant at his last reported address constitutes notice to him of the communication whether or not he receives it." Our review reveals ample evidence to support the conclusion that Freed received the order to report.

■ Appellant next challenges four jury instructions given by the trial court. Two raise points previously decided adversely to appellant. The remaining two attacks are rendered meritless upon reading the instruction immediately preceding each. The instructions given, when taken as a whole, adequately explained the applicable law.[1]

■■ The trial, including closing arguments and oral instructions, was concluded late in the day. Court was recessed overnight without the jury's having retired for deliberation. It began its deliberations the following morning. Soon after retiring, the jury requested of the trial judge and was furnished a written copy of the oral instructions given the preceding evening. This was done outside the presence of appellant and his counsel. Error is predicated as a violation of the F.R.Crim.P., Rule 43 requirement that "[t]he defendant . . . be present . . . at every stage of the trial . . . ." Appellant expressly concedes there was no variance between the written copy delivered and the oral instructions of the preceding evening. Exchanges between judge and jurors will not constitute reversible error absent a showing of clear prejudice to the absent defendant.[2] We do not find that prejudice in the delivery of a writ-

---

1. "When the propriety of instructions given by the trial court is questioned on appeal, the charge is to be considered as a whole. Where it appears on examination of the instructions as a whole that the jury has been fairly and adequately instructed, the requirements of law are satisfied." Jackson v. Kansas City, Kansas, 448 F.2d 518 (10th Cir. 1971).

2. *See* United States v. Jorgenson, 451 F.2d 516 (10th Cir. 1971), cert. denied, 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed.2d 793; Jones v. United States, 299 F.2d 661 (10th Cir. 1962), cert. denied, 371 U.S. 864, 83 S.Ct. 123, 9 L.Ed.2d 101; reh. denied, 371 U.S. 931, 83 S.Ct. 294, 9 L.Ed.2d 239.

ten copy of the previously charged oral instructions.

■ Freed lastly asserts the three-year sentence, imposed upon him for failure to be inducted into military service due to his rejection after a finding of medical unsuitability, constitutes cruel and unusual punishment and denies him due process of law. His argument is that the sentence was imposed for his failure to be inducted due to the medical unsuitability. In this context, he asserts the sentence was imposed not for his failure to report for induction, but for his failure to be inducted due to a physical infirmity. We have repeatedly held that punishment within the enacted statutory limit will not be interfered with absent unusual circumstances,[3] and further that sentence within the statutory limit will not be considered a cruel and unusual punishment.[4] The imposition of a criminal sentence is a matter of judicial discretion and will not be reversed absent a showing of abuse.[5] We find no abuse in the sentencing of Freed.

Affirmed.

3. United States v. Wilshire Oil Company of Texas, 427 F.2d 969 (10th Cir. 1970), cert. denied, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59.

4. Andrus v. Turner, 421 F.2d 290 (10th Cir. 1970).

5. Williams v. United States, 402 F.2d 47 (10th Cir. 1967).