[Civ. No. 8933. First Appellate District, Division One.—January 27, 1934.]

HATTIE M. DRUKKER, Respondent, v. HOWE & HAUN INVESTMENT CO. (a Corporation) et al., Defendants; JOHN B. LOSEY et al., Appellants.

E. C. Pyle for Appellants.

Earl A. Everett and Robert E. Austin for Respondent.

THE COURT.—The plaintiff, who was the owner of lot 625 of Tract No. 6380, sometimes known as Beverly Vista, in Los Angeles County, applied to Howe & Haun Investment Company, a corporation, for a loan of $5,000, to be secured by a deed of trust of the property, her purpose being to erect a dwelling thereon. A written application for a loan signed by her recited that the loan was to be used for said purpose, and that the money should be advanced in installments as the building progressed, the installments to be as follows: "$200.00 to the agent above named as a commission for procuring the said loan; $960.00 when the foundation is in and subfloor laid; $960.00 when the side-walls and roof are up and on and the building completely inspected; $960.00 when the building is plastered; $960.00 when the building is completed and notice of completion recorded in proper file; $960.00 thirty days after completion." The commission mentioned was to be paid to H. K. Howe, an officer of the company. The company agreed to make the loan, and on March 17, 1930, plaintiff executed to it her note, negotiable in form, for the above amount, payable three years after date with interest payable quarterly. At the same time she executed the deed of trust, the company being named therein as beneficiary, and the Title Insurance and Trust Co. as the trustee. A contract was also made by her with Hermann Johnson, a contractor, for the erection of the dwelling, the contract price being $4,800, to be paid in five installments as provided in the loan application. Plaintiff instructed the company to pay these installments to the contractor as they became due from the amount agreed to be loaned.

Work on the dwelling commenced on or about March 20, 1930, and on April 5th the sum of $864.32 was paid by the company to the contractor on account of the first installment. Some further work was done and on April 10th the company delivered a second check for $960 to the contractor for the second installment. This check, however, was not

paid and the dwelling was not completed. The amount of the first check appears to be all that the company paid except certain items which will be hereinafter considered.

Shortly after their execution the company advertised the note and deed of trust for sale, and after negotiations, which commenced on April 4, 1930, defendants Losey on April 7th agreed to purchase the same for the full face value thereof. On that date they paid the company $4,040, and agreed to pay the balance thirty-five days after the filing of a notice of the completion of the dwelling. The instruments were transferred to said defendants, and on June 17, 1930, plaintiff paid them $100, this being the first quarterly installment of interest. On July 5, 1930, plaintiff filed her complaint, asking that the note and deed be declared void as to all sums in excess of $864.

Defendants in their answer averred that they acquired the note and deed in good faith for value and without notice or knowledge of the terms of the contract between the plaintiff and the company except the terms and conditions of the note and mortgage. Further, that by the payment of the interest installment mentioned plaintiff was estopped from denying the validity of the instruments or maintaining the action.

The court concluded that the plaintiff was not estopped by the interest payment, and entered a decree in her favor, adjudging her to be the owner of the lot described subject only to a lien thereon in the sum of $864, with interest at the rate of eight per cent per annum from April 7, 1930, evidenced by said note and deed of trust, less a credit of said interest payment as of June 17, 1930. No findings on the questions of good faith or notice were made except that defendants Losey "saw the advertisement mentioned on April 4, 1930, and went to the office of Howe & Haun Investment Co. and inquired about said loan; that they were informed by an agent of said Howe & Haun Investment Co. that it had the note and deed of trust hereinbefore mentioned; that it had received it and was making a building loan to plaintiff therefor, and that the moneys accruing to plaintiff from said loan were to be paid out to her only as the improvements had been carried forward; that the improvements had been carried forward to the point at which a payment was due to plaintiff from said Howe &

Haun Investment Co., but that said payment had not been made but would be made within a day or two; that defendants John B. Losey and Alla Frances Losey visited the property described in the deed of trust hereinabove referred to on said 4th day of April, 1930, and observed that there was a building thereon in the course of construction; that neither of said defendants saw or communicated with the plaintiff herein. . . . '' The court also found that the sum of $864 was paid on the first installment. The parties, however, have stipulated that the correct amount paid was $864.32; further, that certain deductions were made from the first installment of the loan, these items being as follows: fire insurance premium $42; escrow charge $15; drawing deed $3.50; recording deed $3.50; tax $1.68; title insurance policy $30. They agree that the premium for the fire insurance policy, the recording fee and the tax—a total of $47.18—were proper charges against plaintiff, but disagree as to the other items, the plaintiff claiming that under her contract with the company these charges, totaling $48.50, were improperly withheld and should have been added to the first payment made to the contractor.

The application for the loan recited that the company had ''advanced —— dollars to cover the costs of a title search with the understanding that should the said title search disclose any liens or incumbrances'' then the applicant would discharge the same or the company might refuse the loan, in which event it agreed to release any mortgage or deed of trust which had been executed to it upon being reimbursed for all its expenses and any moneys advanced by it for agent's commissions. As shown by the agreement the only deductions expressly provided to be made from the total amount of the loan was the sum of $200 to be paid the agent as a commission. In a letter from the company to the plaintiff dated April 9, 1930, inclosing the title insurance policy, she was told that the premium on fire insurance had been deducted from the first installment paid the contractor, but the letter made no mention of any other charge or deduction. Plaintiff appears to have acquiesced in the company's action, and her counsel stipulates that this and the other items aggregating $47.50 were proper charges against her. With the exception of the stipulation of coun-

sel and the provision in the agreement quoted the record discloses nothing which justified any deductions.

As stated, the second installment on the building contract became payable when the side walls and the roof were "up and on and the building completely inspected". According to the testimony of the contractor this work was complete on the 5th or 6th of April, and the company had been asked to inspect it. There was no direct evidence of an inspection. Nevertheless a check for the second installment was received by the contractor on April 10th, but, as stated, was not paid by the drawee or otherwise. The company's obligation to plaintiff was to pay these sums as they became due the contractor, and such payment would have constituted performance on their part of their contract with her (Civ. Code, sec. 1487). ■ However, in the absence of an agreement the delivery of a check is not payment and does not have this effect until it is itself paid (*Utah Construction Co.* v. *Western Pacific Ry. Co.*, 174 Cal. 156, 166 [162 Pac. 631]; *Williams* v. *Braun*, 14 Cal. App. 396 [112 Pac. 465]). When paid it relates to the date of its delivery (*Hooker* v. *Burr*, 137 Cal. 663, 668 [70 Pac. 778, 99 Am. St. Rep. 17]). But here, so far as shown, there was no agreement to accept the check as payment by either the contractor or the plaintiff; and the same never having been paid a claim of performance could not be based thereon. It appears beyond reasonable question that the company was in default on the first installment to the extent stated, and also on the second installment, at the time defendants Losey completed their purchase, namely, on April 7, 1930.

■ It is the rule that knowledge by an indorsee that the note was given in consideration of an executory contract by the payee does not deprive the indorsee of his character as a holder in due course if he had no notice of a previous breach of the contract (*Splivallo* v. *Patten*, 38 Cal. 138 [99 Am. Dec. 358]; *Flood* v. *Petry*, 165 Cal. 309 [132 Pac. 256, 46 L. R. A. (N. S.) 861]; *Pratt* v. *Dittmer*, 51 Cal. App. 512 [197 Pac. 365]; 8 Cor. Jur., Bills and Notes, sec. 718, p. 510). ■ To constitute notice of an infirmity in the instrument or a defect in the title of the person negotiating it the one to whom it is negotiated must have had actual notice of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad

faith (Civ. Code, sec. 3137). Every holder is deemed to be *prima facie* a holder in due course, but when it is shown that the title of any person who negotiated the instrument is defective the burden is upon the holder to prove that he or some person under whom he claims acquired the title as a holder in due course (Civ. Code, sec. 3140) ; and such title is defective when the instrument has been negotiated in breach of faith or under such circumstances as to amount to fraud (Civ. Code, sec. 3136). But where the indorsee shows that the instrument was acquired for value before maturity in the usual course of business, and there are no circumstances creating the presumption that he knew of facts impeaching its validity, the burden is then cast upon his adversary to show that the instrument was taken with notice of the latter's equities (*Goodale* v. *Thorn,* 199 Cal. 307 [249 Pac. 11]).

 It is evident from the testimony of defendants Losey as well as from the finding quoted that defendants were familiar with the terms of the contracts in question although they made no express admission of the fact. They also knew on April 4th, as the court found, that the first installment was past due. Further, they visited the property on that date and observed that the foundation and subfloor of the dwelling had been laid, this being the first stage of the construction as provided by the contracts; and also that the walls were up and that the roof was on. This was all that was necessary with the exception of an inspection to entitle the contractor to the second installment. It appears that the company failed to inspect and, as shown, defaulted in payment. It is also clear, both from defendants' testimony and the finding, that they relied upon the promises of the company's agent that these installments would be paid. The facts known to them were sufficient to impeach the company's right to negotiate the instrument; and it was their duty before making payment to ascertain whether the company's contract with the plaintiff had in these respects been performed.

 While the court made no express finding on this question, nevertheless where the findings made and the evidence reasonably support but one conclusion, and that against the appellants, the failure to find on an issue is not

ground for reversal (*Hulen* v. *Stuart,* 191 Cal. 562 [217 Pac. 750]; *Meadows* v. *Snyder,* 209 Cal. 270 [286 Pac. 1012]).

█ As respects the claim that the interest payment by plaintiff constituted an estoppel, defendants suffered no detriment and the plaintiff received no benefit on that account; nor was such payment, in the light of what she then knew of the transaction between defendants and the company, necessarily inconsistent with her subsequent contention that the obligation was enforceable against her only in part.

█ Defendants complain that the question of plaintiff's right to a credit for the interest payment in the manner decreed was not put in issue by plaintiff. While this is true of plaintiff's complaint, defendants alleged the fact of payment as ground for their plea of estoppel. It was a proper credit on any theory of the case, and the trial court correctly so held.

█ The amounts properly charged against plaintiff according to the stipulation referred to totaled $911.50; consequently, this was the amount chargeable as a lien against the property and secured by the deed of trust. The judgment is accordingly modified by striking therefrom that portion which reads "but said note is valid and enforcible only for the sum of $864.00, with interest thereon at the rate of eight per cent per annum from the 7th day of April, 1930, and plaintiff is entitled to a credit thereon for the sum of $100.00 as of June 17, 1930", and inserting in lieu thereof the following: "but said note is valid and enforcible only for the sum of $911.50, with interest thereon at the rate of eight per cent per annum from the 7th day of April, 1930, and plaintiff is entitled to a credit thereon for the sum of $100.00 as of June 17, 1930". As so modified the judgment will stand affirmed, each party to bear his own costs of appeal.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1934.