[Sac. No. 6096. In Bank. Feb. 21, 1952.]

ROY L. HALE, Respondent, v. DAVID D. BOHANNON et al., Defendants; DOLLY VARDEN LUMBER COMPANY (a Corporation), Appellant.

McEnerney & Jacobs, Garrett McEnerney II, Justin M. Jacobs, Kenneth D. Sevier and James Shaughnessy for Appellant.

Woodman, Leddy & Sautter for Respondent.

EDMONDS, J.—When sued in Humboldt County, Dolly Varden Lumber Company, a corporation, moved the court for a change of venue to the county of its principal place of business. The most important question presented for decision upon the appeal from an order denying that motion is whether section 395 of the Code of Civil Procedure is applicable to an action against a corporation.

Hale's verified complaint alleges that, by the terms of a written contract, the lumber company agreed to pay him compensation for his services and a stated amount for certain personal property. Judgment is asked for the sums which, it is claimed, became due under the contract and have not been paid.

The contract provides for Hale's employment by the lumber company as superintendent of logging operations in Humboldt County. Hale agreed to sell to the lumber company specified personal property. In payment for his services and the purchase price of the property sold, the lumber company promised to pay him 20 per cent of its net profits from operations during the existence of the agreement. Determination of profits is to be made in accordance with a detailed formula in the contract.

As stated in the contract, during its existence the lumber company will pay $1,000 per month to Hale as a drawing account, chargeable against the profits to which he may be entitled. Provision is made for a final settlement of accounts upon termination of the agreement.

The contract declares that it supersedes an oral agreement under which Hale had been serving as the lumber company's logging superintendent. Another provision reads: "This instrument contains the entire agreement between the parties hereto and shall supersede and control any and all prior understandings, whether written or oral." The place where the money to become due under the contract shall be paid is not specified.

In support of its motion for change of venue, the lumber company presented the affidavit of its president, David D. Bohannon. He avers that the company's principal place of business at all times material to this action was in San Mateo County. Furthermore, he says, the contract was executed and delivered at the company's principal office in San Mateo County.

Hale's affidavit in opposition to the company's motion states that he is a resident of Humboldt County. He then avers that the contract was made orally between him and the company's agents in Humboldt County and was to be performed there by both parties. The obligations and liabilities of the parties arose in Humboldt County, he says. Payments under the contract were made at a bank in Humboldt County, and it was breached there.

By a supplemental affidavit, the corporation denies that the contract was made orally in Humboldt County. Although the contract was negotiated partially in Humboldt County, Bohannon states, it was not completely negotiated or agreed to at that place. Many of its provisions, he says, were neither mentioned nor agreed to until a meeting was held in San Mateo County for the purpose of finally negotiating the contract. At this meeting, according to the affidavit, Hale was present and a typewritten draft of the contract was discussed and altered by interlineation and initialing and by attaching thereto the inventory of personal property presented for the first time by Hale. This draft, as amended and supplemented, Bohannon avers, then was agreed to by the parties and executed by each of them.

Bohannon further asserts that Hale's affidavit is untrue in stating that payments to him under the contract were made at a bank in Humboldt County. According to Bohannon, the money was paid by 11 checks of the corporation which were drawn in San Mateo County on bank accounts maintained in Humboldt County. With one exception, these checks were mailed to Hale at his Humboldt County address.

Other averments of Bohannon are that payments to Hale under the prior oral contract were made in the same manner. At no time, it is said, did Hale object to the method of payment under either contract. Hale's statements as to the place where the obligations arose, the place of performance and the place where the breach occurred are characterized as "bare, unsupported conclusions."

Hale's supplemental affidavit reiterates that a completed oral contract was made in Humboldt County "with only a written memorandum made and signed in" San Mateo County. He describes the meeting in San Mateo County as being wholly unrelated to the contract and not called for the purpose of executing it. But while he was there, he says, it was decided to obtain a written record of the oral contract. According to this affidavit, the essential terms of the contract were orally agreed to in Humboldt County, "leaving minor and incidental matters" only to be embodied in the writing. As stated by Hale, any alterations in the draft of the contract had been agreed to in Humboldt County.

It was understood by the parties, he says, that their oral agreement was to be embodied in a written instrument drawn by the lumber company's attorney and forwarded to Humboldt County for execution and delivery. His explanation of why this was not done is that, before the contract was prepared, he happened to be in San Mateo County on other business. The one check which he received in San Mateo County was delivered to him as a matter of convenience. At no time, he adds, did he accept the lumber company's checks "as absolute payment of the amount due," nor was there any agreement that they were so to be accepted. All checks were "accepted in the ordinary course of business."

As grounds for reversal of the order denying the motion for change of venue, the lumber company contends that under the evidence, as a matter of law, the contract was made in San Mateo County, its performance was to be rendered there, and the breach, if any, occurred there. In addition, it says, section 395 of the Code of Civil Procedure requires that San Mateo County be deemed the place of performance in the absence of a special contract in writing to the contrary.

Hale declares that the court's order is supported by evidence that the contract was performable in Humboldt County and the breach occurred there. He also construes section 395 of the Code of Civil Procedure as not applicable to an action against a corporation.

By its express terms, the written contract superseded any and all prior understandings. Assuming that a prior oral contract identical in all respects to the writing existed between the parties, it was replaced by the specific provisions of the written contract. In addition, Hale's own affidavits show that a complete agreement had not been reached between the parties in Humboldt County. He admits that the negotiations in Humboldt County left certain matters to be disposed of and embodied in a written contract.

Hale now argues that "the written instrument was an integration." As defined by section 228 of the Restatement of Contracts, an "integration" is "the final and complete expression of the agreement." In interpreting a written contract, the writing "supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." (Civ. Code, § 1625.) It is argued that section 1625 of the Civil Code and section 1856 of the Code of Civil Procedure are not applicable to the question of venue. ▮▮ However, as was said in *Estate of Gaines,* 15 Cal.2d 255, 264-265 [100 P.2d 1005], "The parol evidence rule . . . is not a rule of evidence but is one of substantive law. . . . The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), *becomes the contract of the parties.*"

That this is the effect intended by the parties is apparent from the terms of the written contract itself. ▮ The situation is not comparable to that where the contract itself is oral but, for the purposes of the statute of frauds, has been confirmed by written memorandum. In such case, the oral contract governs and the writing, which does not purport to be an integration, serves only to prevent the contract from being unenforceable. (*Taylor* v. *J. B. Hill Co.,* 67 Cal. App.2d 581 [154 P.2d 926].) Concededly, the written contract was executed and delivered in San Mateo County and, in legal effect, it was made there.

However, Hale argues that his action may be maintained in Humboldt County under the provisions of section 16 of article XII of the Constitution of California. As the basis for this position, he relies upon evidence which he says is sufficient to support the trial court's finding that the contract was performable and the breach occurred in Humboldt County. ▮ The motion for change of venue was made and de-

466

termined upon the allegations of the verified complaint and the affidavits of the respective parties. Therefore, "all conflicts must be resolved in favor of the prevailing party; . . . and all reasonable inferences which are to be drawn must be in support of the trial court's order." (*C. H. Parker Co., Inc.* v. *Exeter Refining Co.*, 26 Cal.App.2d 610, 611 [79 P.2d 1114]; *Gordon* v. *Perkins*, 203 Cal. 183, 186 [263 P. 231].)

The contract does not provide where the lumber company was to make its payments. This being the obligation the breach of which is pleaded as the cause of action, under the constitutional provision, the place where it was to be performed is the decisive factor insofar as venue is concerned. (*Burr* v. *Western States Life Ins. Co.*, 211 Cal. 568, 574 [296 P. 273]; *Union Oil Co.* v. *Basalt Rock Co., Inc.*, 30 Cal.App.2d 317, 320 [86 P.2d 139].)

"In a suit upon the contract of a corporation, where no place of performance is expressly stipulated, it ought to be held performable in the place where the circumstances, viewed in the light of pertinent code provisions, indicate that the parties expected or intended it to be performed." (*Bank of Yolo* v. *Sperry Flour Co.*, 141 Cal. 314, 316 [74 P. 855, 65 L.R.A. 90]; *G. W. McNear, Inc.* v. *Geophysical Service, Inc.*, 90 Cal.App.2d 662, 666 [203 P.2d 550]; *Swartz* v. *California Olive Growers' Pack. Corp.*, 56 Cal.App.2d 168, 171 [133 P.2d 20]; *Lakeside Ditch Co.* v. *Packwood C. Co.*, 50 Cal.App. 296, 307-308 [195 P. 284].)

"It is the rule that the question of where the contract was to be performed is one of fact, and the determination by the trial court of that question will not be disturbed if there is any substantial evidence in the record to support it, and all conflicts must be resolved in favor of the prevailing party." (*Gallo* v. *Boyle Mfg. Co., Inc.*, 35 Cal.App.2d 168, 169 [94 P.2d 1010]; *Swartz* v. *California Olive Growers' Pack. Corp., Inc., supra,* pp. 170-171.)

The lumber company argues that, there being no conflict in the evidence, the question of place of performance may be determined as a matter of law. The record does not support this contention. The principal performance under the contract was to be in Humboldt County, which also is Hale's residence. These facts are relevant as bearing upon the intention of the parties (*G. W. McNear, Inc.* v. *Geophysical Service, Inc., supra,* p. 665; *Swartz* v. *California Olive Growers' Pack. Corp., supra,* pp. 169-170; *Lakeside Ditch Co.* v. *Packwood C. Co., supra,* p. 307), although not in themselves conclusive.

■ In addition, the circumstances must be viewed in the light of pertinent statutes. (*Burr* v. *Western States Life Ins. Co., supra*; *Bank of Yolo* v. *Sperry Flour Co., supra.*) ■ Sections 1488 and 1489 of the Civil Code state the rules as to the place of performance in the payment of a debt. By their terms, as at common law, if there be no agreement or stipulation to the contrary, a debt is payable at the place where the creditor resides, or at his place of business, if he has one, or wherever else he may be found. (*Bank of Yolo* v. *Sperry Flour Co., supra*; *Pacific Freight Lines* v. *Pioneer Express Co.,* 39 Cal.App.2d 609, 614-615 [103 P.2d 1056]; *Konig* v. *Associated Almond Growers,* 37 Cal.App.2d 360, 366 [99 P.2d 678].) ■ Under ordinary circumstances, it is the duty of the debtor to seek the creditor for the purpose of making payment.

The lumber company contends that none of the foregoing circumstances has any bearing upon the place of performance. It says that the sole evidence upon the question is to be found in the conduct of the parties both before and after the execution of the contract. The mailing of checks from San Mateo County, it argues, was the method of payment acquiesced in by Hale and that procedure established the proper method and place of performance. Its analysis of the rights of the parties is that payment of the checks related back to the time of delivery, and as delivery was accomplished by depositing the checks in the mail, the payment was made in San Mateo County.

■ "The mere giving of a check does not constitute payment (citations) nor does the mere acceptance thereof raise a presumption that such acceptance constitutes payment. (Citation.) And since a check of itself is not payment until cashed the party attempting to prove payment by mere delivery or acceptance must go further and in addition prove that such delivery and acceptance was in accordance with an agreement that it was to be accepted as payment." (*Mendiondo* v. *Greitman,* 93 Cal.App.2d 765, 767 [209 P.2d 817]; 70 C.J.S. 233-234.) "When paid it relates to the date of its delivery." (*Drukker* v. *Howe & Haun Inv. Co.,* 136 Cal.App. 437, 442 [29 P.2d 289]; *Hooker* v. *Burr,* 137 Cal. 663, 668 [70 P. 778, 99 Am.St.Rep. 17]; 70 C.J.S. 235.) ■ However, the time of payment of a check does not necessarily relate to the place of its delivery. ■ The rules which make delivery a decisive factor in determining the place of execution of a contract are not relevant in a controversy concerning the place where per-

formance is to be rendered. The receipt of the payments in Humboldt County was as much a part of the past conduct of the parties as was the mailing of the checks from San Mateo County. The testimony as to what was done does not require the conclusion that placing of checks in the mail was the performance contemplated by the contract.

 The lumber company points out that the contract requires monthly payments to Hale who resides 350 miles from San Mateo County. It contends that the frequency of the payments and the distance between the counties compels the conclusion that the deposit of checks in the mail should constitute performance. These facts, however, do not preclude the possibility that the parties placed upon the one making the payments the burden of overcoming any difficulties which might arise in carrying out the requirements of the contract. The mailing of checks was but one of many methods which the lumber company could have used to fulfill the statutory duty of performance by seeking out its creditor.

 At most, the action of the lumber company in sending its checks to Hale raises a conflict as to the place of performance. Considering all of the evidence in the light of the surrounding circumstances, it reasonably supports the conclusion that payment was to be made in Humboldt County. If the performance was due in Humboldt County, then the breach also occurred there. (*Clark* v. *Policy-Holders Life Ins. Assn.*, 138 Cal.App. 505, 509 [32 P.2d 653].)

As additional support for its position, the lumber company calls to its aid section 395 of the Code of Civil Procedure. Since 1939, that statute has provided in part: "When a defendant has contracted to perform an obligation in a particular county, either the county where such obligation is to be performed, or in which the contract in fact was entered into, or the county in which the defendant, or any such defendant, resides at the commencement of the action, shall be a proper county for the trial of an action founded on such obligation, and the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed unless there is a special contract in writing to the contrary." If this provision is applicable to an action against a corporation, San Mateo County, where the contract was made, is the place in which the obligation was incurred (*Armstrong* v. *Smith*, 49 Cal.App.2d 528, 534 [122 P.2d 115]; *Campbell* v. *Clifford*, 52 Cal.App.2d 615, 619 [126 P.2d 887]) and the county where it is to be performed.

The effect of section 395 in an action against an individual defendant has been stated as follows: "The express condition of the statute is that unless there is a special contract in writing to the contrary the county in which the obligation is incurred is the venue of an action arising out of it. What the legislature has in substance said is that all actions arising on contract shall be tried in the county in which the defendant resides, or in which the contract was made, unless the defendant has contracted specially and in writing as to the county in which his obligation is to be performed, in which event such county is also a proper county for the trial of the action." (*Armstrong* v. *Smith, supra,* p. 532.)

The lumber company contends that the rule of the code is equally applicable to an action against a corporate defendant. The provisions of section 16 of article XII of the Constitution, it says, are subject to interpretation by the Legislature; the statute is merely a reasonable legislative interpretation filling a gap left by the constitutional provision.

The constitutional provision reads in part as follows: "A corporation . . . may be sued in the county where the contract is made or is to be performed, or where the obligation or liability arises, or the breach occurs; or in the county where the principal place of business of such corporation is situated, subject to the power of the court to change the place of trial as in other cases." As pointed out in *Cook* v. *W. S. Ray Mfg. Co.,* 159 Cal. 694, 698-699 [115 P. 318], the object of the section is to permit an action against a corporation to be brought in a county other than that of its principal place of business and thus permit a wider venue than is afforded in an action against an individual defendant.

Similarly, the 1933 amendment to section 395 of the Code of Civil Procedure, which is the basis of the 1939 amendment, was described in the Code Commissioners' note as intended to liberalize the venue rules in the plaintiff's favor. Since 1933, there has been a continuing liberalization of the rules of venue by the addition of places other than the defendant's residence for the trial of an action based upon a contract. It is not reasonable to assume that, in thus relaxing the rules of venue as to actions against individuals, the Legislature intended to limit the rules formerly applicable to corporations.

The lumber company argues that the statute in no way restricts the constitutional provision. The code section, it says, relates only to the evidence necessary to establish where a contract is to be performed. This argument ignores

the plain meaning of the words of the enactment, which allows an action upon an obligation arising out of contract to be tried in any one of three counties. "But the legislature did not stop there. It added a limitation, and the limitation which it added is this: 'the county in which such obligation is incurred shall be deemed to be the county in which it is to be performed.' The effect of the limitation is to cut down the number of counties in which an action may properly be tried to two, namely, the county in which the defendant resides, and the county in which the contract was made.

"Having set up the limitation, the legislature created an exception to it, providing that if it be specially contracted in writing as to the county of performance, such county is also a proper county for the trial of an action. Under conditions where the exception is effective, the number of proper counties goes back to three." (*Armstrong* v. *Smith, supra,* pp. 531-532; *Wilson* v. *Hoffman,* 81 Cal.App.2d 664, 666-667 [184 P.2d 951].)

Accordingly, under the statute, an action upon a contractual obligation may be tried only in the county of the defendant's residence or in the county where the agreement was made. However, if the contract is in writing and specifically designates the county where the defendant's obligation is to be performed, then the action also may be tried in that county. This provision, if applied to an action against a corporation, would be in direct conflict with the Constitution. By its very terms, it would reduce the number of counties for the trial of such action from five to four, except where the contract is written and specifies the place of performance.

The constitutional provision "is of the nature of a code provision in regard to procedure, and is obviously self-executing, and differs from a statutory code provision only in that it cannot be repealed, nor can its scope and operation be limited by a statute. So far as it conflicts with a statute, the statute must give way." (*Miller & Lux* v. *Kern County Land Co.,* 134 Cal. 586, 587 [66 P. 856]; *Buck* v. *James McClatchy Pub. Co., Inc.,* 105 Cal.App. 248, 254 [287 P. 364]; 6A Cal.Jur. 1393-1394.)

Denying that there is any conflict between the statute and the Constitution, the lumber company argues that the code provision is necessary legislation implementing the administration and interpretation of the Constitution. It cites as analogous to the present question decisions upholding the legislative power to pass statutes providing reasonable regulations

and control over the constitutional right to vote, to recover compensation for property appropriated to public use, to exempt property from taxation, and to have a trial by jury.

██ There is a clear limitation, however, upon the power of the Legislature to regulate the exercise of a constitutional right. As stated in *Chesney* v. *Byram*, 15 Cal.2d 460, 464 [101 P.2d 1106], "all such legislation must be subordinate to the constitutional provision, and in furtherance of its purpose, and must not in any particular attempt to narrow or embarrass it." ██ The application of section 395 to actions against corporations would narrow and embarrass the constitutional provision materially by reducing in number the possible counties for trial of the action. The procedural authorization of the Constitution is clear and needs no legislation in its aid in the way of interpretation of either its meaning or its application to particular actions as they arise.

██ Section 395 is a venue statute specifying the place where an action may be tried. In no sense is it a rule of evidence comparable to a statute of frauds. It does not provide that all contracts must be in writing, or that all contracts must specify the place for performance, or that the place of performance may not be proved in the absence of a writing. ██ It simply declares that actions based upon certain types of contracts may be brought in the county where performance is due as well as in the other enumerated places. This privilege is far less than the constitutional one to sue a corporation upon *any* contract in the county where the contract is to be performed. The statute cannot be applied to limit the greater constitutional right.

The lumber company argues that section 395 was applicable to actions against corporations prior to the 1939 amendment and that, therefore, the amendment must also be applicable. The decisions which have considered the question do not support this theory.

One line of decisions originated with *Jenkins* v. *California Stage Co.*, 22 Cal. 537, which was decided prior to the adoption of the Constitution of 1879. The court there held that a corporation's residence was its principal place of business under section 20 of the Practice Act, the predecessor to section 395 of the Code of Civil Procedure.

The rule of the Jenkins case was challenged in *California Southern R. Co.* v. *Southern Pac. Co.*, 65 Cal. 394 [4 P. 344]. However, the decision was rested upon another section of the

code. What was said in regard to the venue of an action, other than one of eminent domain against a corporation, is dictum. *Thomas* v. *Placerville Gold Quartz Min. Co.*, 65 Cal. 600 [4 P. 641], questioned the "residence" rule of the Jenkins case, at least insofar as applied to foreign corporations, but the issue of venue was determined under the nonresident provision of section 395. Although both cases were decided after the adoption of the Constitution of 1879, the constitutional provision was not mentioned.

*Cohn* v. *Central Pacific R. Co.*, 71 Cal. 488 [12 P. 498], in express terms approved the Jenkins decision. However, the Cohn case turned upon the provisions of section 16, article XII, of the Constitution and the discussion concerning section 395 is dictum. The same observation is applicable to *Fresno Nat. Bank* v. *Superior Court*, 83 Cal. 491, 497 [24 P. 157], which followed the Cohn case.

The language used in *Krogh* v. *Pacific Gateway & Dev. Co.*, 11 Cal.App. 237 [104 P. 698], indicates that section 395 is applicable to an action against a corporation. However, as the court stated, the "plaintiff has not brought himself within the provisions of the constitution, and defendant is entitled to a change of the place of trial under the last clause of the [constitutional] section." (P. 240; see *Rowe* v. *Policy Holders Life Ins. Assn.*, 131 Cal.App. 339, 342 [21 .P.2d 443].) Because this was the basis of the decision, the discussion of section 395 is dictum.

Relying upon the Jenkins and Cohn decisions, in *McSherry* v. *Pennsylvania Consol. Gold Min. Co.*, 97 Cal. 637 [32 P. 711], the court held that a corporation's principal place of business is its residence. It stated that this is the proper county, under section 395, for the trial of an action against a corporation, subject to the provisions of the Constitution. However, the controlling factor in reaching that conclusion was the right of individual defendants, joined with the corporate defendant, to have the action moved to the county of their residence. The discussion of the applicability of section 395 to an action against a corporation is dictum. The same comments are applicable to *Brady* v. *Times-Mirror Co.*, 106 Cal. 56 [39 P. 209], which followed the Cohn and McSherry cases.

█ Where a corporation and an individual are properly joined as defendants and the action is commenced in the county where the corporation has its principal place of business the individual defendant may not have the action moved to the county of his residence, if different, for trial. (*Hellman*

v. *Logan,* 148 Cal. 58 [82 P. 848].) In such circumstances, under the terms of section 395, the residence of the corporation is the county where it has its principal place of business. (*McClung* v. *Watt,* 190 Cal. 155, 158 [211 P. 17].) This application of section 395 now is well settled. (*Independent Iron Works, Inc.* v. *American President Lines, Ltd.,* 35 Cal. 2d 858 [221 P.2d 939]; *California C. P. Growers* v. *Corcoran,* 14 Cal.App.2d 264 [57 P.2d 1360]; *Nelson* v. *Marsh,* 100 Cal. App. 578, 581-582 [280 P. 695]; *Richmond T. Corp.* v. *Parr T. Co.,* 96 Cal.App. 152 [273 P. 845]; *Winterburn* v. *Sheriff,* 61 Cal.App. 531 [215 P. 406]; *Bloom* v. *Michigan Salmon Min. Co.,* 11 Cal.App. 122 [104 P. 324].) It also has been held that an individual defendant may have an action, not commenced in the county of any defendant's residence, moved to a corporate defendant's principal place of business under section 395. (*Walker* v. *Wells Fargo Bank & Union Trust Co.,* 24 Cal.App.2d 220 [74 P.2d 849].)

The basis of these decisions may be found in the line of authority beginning with the Jenkins case. However, this application of section 395 involves the right of an individual defendant apart from that of the corporate defendant. A suit brought in the county where the corporation has its principal place of business is one commenced in a proper county under the constitutional provision. The individual defendant joined with the corporation may not secure a change of venue in such circumstances because, under section 395, "some" of the defendants reside in the county where the action was commenced. Where the action is not commenced in the county of any defendant's residence, the individual defendant then is entitled, under section 395, to secure a change of venue to the county where some or all of the defendants reside. This rule is not a holding that section 395 is applicable in determining the venue of an action commenced solely against a corporate defendant.

Section 405 of the Civil Code (now Corp. Code, § 6403) specifies the requirements which a foreign corporation must meet to transact intrastate business in California. Beginning with *Thomas* v. *Placerville Gold Quartz Min. Co., supra,* the nonresident provision of section 395 was held applicable to an action brought against a foreign corporation. (*Rains* v. *Diamond Match Co.,* 171 Cal. 326 [153 P. 239]; *Ryan* v. *Inyo Cerro Gordo Min. & P. Co.,* 41 Cal.App. 770 [183 P. 250]; *Waechter* v. *Atchison T. & S. F. R. Co.,* 10 Cal.

App. 70 [101 P. 41].) The reasoning of these cases is that a foreign corporation acquires no "residence" in this state. In none of them was the constitutional provision applied. However, since 1929, section 405 has required such a corporation to register a principal office in this state.

The distinction between foreign and domestic corporations laid down in the early decisions was continued briefly following the adoption of the 1929 amendment to section 405 of the Civil Code. In *Hobson* v. *Metropolitan Cas. Ins. Co.*, 114 Cal.App. 349 [300 P. 87], the corporation failed to show compliance with section 405 and, therefore, it could not claim a principal place of business in the state. Although the court purported to follow the rule of the earlier decisions, the basis of its holding was that the corporation failed to show facts sufficient to warrant a change of venue under the constitutional provision.

*Long* v. *General Petroleum Corp.*, 11 Cal.App.2d 708 [54 P.2d 1147], held that the amendment to section 405 effected no change in the prior law; foreign corporations were not thereby placed on an equal footing with domestic corporations under the Constitution. The court again applied the nonresident provisions of section 395.

Section 16, article XII, of the Constitution first was applied to foreign corporations in *Bohn* v. *Better Biscuits, Inc.*, 26 Cal.App.2d 61 [78 P.2d 1177]. The court disapproved the Long case and attempted to distinguish the earlier decisions on their facts. Despite this effort, by the Bohn case the earlier rule was terminated, at least as to those foreign corporations which complied with section 405, and foreign and domestic corporations were placed upon an equal footing under the Constitution. (See note, 12 So.Cal.L.Rev. 503.)

In the Bohn case there is an extensive discussion of section 395, designed primarily to negative the argument that a foreign corporation which has complied with section 405 is a nonresident. Some of the language, here relied upon by the lumber company, is both unnecessary to the decision and overly broad. Without citation of authorities, the court said that section 395 applies "to persons both natural and artificial and whether the corporation is a domestic or a foreign corporation." (P. 65.) It also stated that "it has never been held that its provisions did not apply to corporations." (P. 65.)

That these statements are dictum clearly appears from the following paragraph, where the court said: "Whatever may

be the provisions of our statutes they are controlled by the provisions of the Constitution. . . . The evidence introduced in the instant case having shown that the plaintiff's cause of action was for breach of contract, that the contract was neither made nor to be performed, nor was it breached in San Francisco, the sole question remaining for determination was where was the principal place of business of the defendant corporation situated.'' (P. 65.) The constitutional section could not be restricted to domestic corporations, it was held, and in accordance with the terms of the Constitution, the order denying the corporation's motion for a change of venue to the county of its principal place of business was reversed.

The original rule that a foreign corporation has no ''residence'' within the state continues to apply to those foreign corporations which have failed to comply with section 405. (*Warren* v. *Ritter*, 61 Cal.App.2d 403 [142 P.2d 948] ; *Kane* v. *Universal Film Exchanges, Inc.*, 32 Cal.App.2d 365 [89 P.2d 693, 91 P.2d 577].) In the Kane case, however, the affirmance of the old rule as to such corporations is dictum, the basis of the decision being the corporation's failure to show sufficient cause for the issuance of a writ of supersedeas. As to complying foreign corporations, the present rule is the same as that for domestic corporations and the constitutional provision governs. (*Ellis* v. *National Cas. Co.*, 99 Cal.App.2d 77 [221 P.2d 127] ; *G. W. McNear, Inc.* v. *Geophysical Service, Inc.*, *supra.*)

In actions against certain public corporations, venue has been determined in accordance with section 395. (*Gallup* v. *Sacramento etc. Drainage Dist.*, 171 Cal. 71 [151 P. 1142] ; *Buck* v. *City of Eureka*, 97 Cal. 135 [31 P. 845] ; *Yedor* v. *Ocean Acc. & Guar. Corp.*, 85 Cal.App.2d 698 [194 P.2d 95] ; *De Campos* v. *State Comp. Ins. Fund*, 75 Cal.App.2d 13 [170 P.2d 60].) These decisions are of no assistance in determining the present question because such actions are not governed by the constitutional provision.

The record of the proceedings of the constitutional convention clearly indicates that the provision there adopted, and not the Code of Civil Procedure, was intended to govern the venue of an action against a corporation. Eugene Fawcett, introducing a proposed provision which became section 16 of article XII, argued as follows: ''Under our system, corporations have a legal residence at their principal place of business. The result is that corporations in this State are legally resident, nearly all of them, at the City and County of San

Francisco, and that under our rules of practice, those who have litigation with such corporations must go to the City and County of San Francisco to sue. . . . That operates unjustly and unfairly. I think that the rule ought to be, that a person having a cause of action against a corporation should be entitled to meet at the place where the cause of action has arisen, where the obligation or liability arises, or the breach occurs. . . . The effect of this amendment will be to authorize them to sue at the place where the cause of action arises, or at the principal place of business of the corporation. . . . Perhaps it may be said that it more properly belongs to the Code of Civil Procedure, but it is quite as important to the rights of the people as many of the provisions contained in this report.'' (1 Debates and Proceedings of the Constitutional Convention 452-453.)

The constitutionality of section 16 under the federal Constitution as applied to personal or transitory actions repeatedly has been upheld. (*Cook* v. *W. S. Ray Mfg. Co., supra*; *Lewis* v. *Southern Pac. Coast R. Co.*, 66 Cal. 209 [5 P. 79].) The early decisions under the new Constitution impliedly recognized the inapplicability of section 395 to such actions against domestic corporations by refusing requests for change of venue to the county where the corporate defendant had its principal place of business. (*Tingley* v. *Times-Mirror Co.*, 144 Cal. 205 [77 P. 918] ; *Trezevant* v. *W. R. Strong Co.*, 102 Cal. 47 [36 P. 395] ; *Lewis* v. *Southern Pac. Coast R. Co., supra.*)

These cases laid the foundation for a second line of decisions holding section 395 inapplicable to a personal or transitory action against a domestic corporation. *Cook* v. *W. S. Ray Mfg. Co., supra,* collected the earlier decisions and applied to them the constitutional purpose as disclosed by the convention proceedings. The rule there stated that a corporate defendant must show some sufficient ground for a change of the place of trial other than the mere fact that its ''residence'' is in another county, consistently has been followed. (*Walker* v. *Wells Fargo Bank & Union Trust Co.*, 8 Cal.2d 447 [65 P.2d 1299] ; *Ray Wong* v. *Earle C. Anthony, Inc.*, 199 Cal. 15 [247 P. 894].) At least since the decision in the Cook case, the constitutional provision, and not section 395, has controlled the venue of an action against a corporation. (*Heffernan* v. *Bennett & Armour,* 63 Cal.App.2d 178, 186 [146 P.2d 484] ; *Buck* v. *James McClatchy Pub. Co., Inc.,*

*supra; Lakeside Ditch Co.* v. *Packwood C. Co., supra; Raphael* v. *People's Bank of Benicia,* 45 Cal.App. 115 [187 P. 53].)

*Swartz* v. *California Olive Growers' Pack. Corp., supra,* which arose after the 1939 amendment to section 395, concerned a contract in writing which did not specify the place of its performance. The evidence established that the contract was executed in Tulare County. Suit was begun in Los Angeles County and the trial court denied a motion for a change of venue to Tulare County, which also was the location of the corporation's principal place of business. The court said: "Inasmuch as the contract specifies no place of performance it was performable in the county in which the circumstances attendant upon the execution of the writing indicate that the parties intended as the theater of its performance." (P. 171.) The court found the evidence sufficient to support an implied finding that the contract was to be performed in Los Angeles County and affirmed the order. In so doing, the court held that section 395 "does not apply to domestic corporations but is applicable only to actions against natural persons." (P. 172.)

The holding that section 395 is "applicable only to actions against natural persons" has been criticized as dictum. (*De Campos* v. *State Comp. Ins. Fund, supra,* p. 18.) However, the De Campos case recognized as in accord with the authorities the holding that section 395 does not apply to a transitory action against a private corporation. Although the limitation of section 395 to natural persons was dictum, the conclusion that it is inapplicable to an action against a domestic corporation was the basis of the decision in the Swartz case. Had section 395, as amended in 1939, been applicable, the statute would have required the court to grant the motion for change of venue.

The only other case concerning venue as determined by place of performance in a contract action against a corporation which has arisen since the 1939 amendment is *G. W. McNear, Inc.* v. *Geophysical Service, Inc., supra.* The contract there involved did not specify the place of performance. It was not executed in the county where the action was commenced. Affirming an order denying a change of venue to the county of the corporation's principal place of business, the court found from the evidence that the contract was to be performed in the county where the action was commenced. In so doing, the court refused to apply section 395.

In *Konig* v. *Associated Almond Growers, supra,* page 363, the court held: "This is a personal or transitory action wherein the sole defendant is a California corporation, therefore, section 395 of the Code of Civil Procedure does not apply and resort must be had to the provision of the Constitution which governs the venue of such actions." *McDuffie* v. *California Tehama Land Corp.,* 138 Cal.App. 245, 249 [32 P.2d 385], is to the same effect. Applying the same rule to foreign corporations, it was said in *Ellis* v. *National Cas. Co., supra,* page 79, that the constitutional provision, "rather than the provisions contained in section 395 of the Code of Civil Procedure, is applicable to corporations in transitory actions."

In summary, both before and after the 1939 amendment, the courts consistently have held that section 395 does not apply to a transitory action against a domestic corporation. The apparent exceptions to this rule since the adoption of the Constitution in virtually all instances have been dicta.

Insofar as section 395 affects the right of an individual defendant to a change of venue, a corporation's principal place of business is its "residence." However, this application of section 395 does not determine the venue of the action against the corporate defendant, it having been commenced in one of the counties specified by the Constitution.

Where the plaintiff fails to bring his action in any of the counties specified by the Constitution, the corporation then is entitled to a change of venue to the county of its principal place of business under the last clause of the constitutional provision. However, where the plaintiff has brought himself within the terms of the Constitution, the corporation may not secure a change of venue to its "residence" as may other defendants under section 395.

Although section 395 has been applied to an action against a foreign corporation, it cannot be said that the same rule governs when a domestic corporation is sued. Prior to the Bohn case, the two were treated separately for the purposes of venue. By that decision the constitutional provision first was held applicable to a foreign corporation. As to those foreign corporations now coming within the constitutional provision, section 395 consistently has been held inapplicable, despite dictum in the Bohn case to the contrary. Neither may the application of section 395 to governmental agencies be said to broaden the statute to include a private corporation, because the venue as to a public corporation is not determined by the Constitution.

 The purpose of the constitutional provision was to provide a venue for actions against corporations greatly enlarged over that for actions against other defendants. As shown by the proceedings of the constitutional convention, the intention of the section was to benefit the plaintiff, who otherwise would be obliged to travel to the corporation's principal place of business to commence his action. To uphold the application of section 395 for which the lumber company here contends would be to defeat, in large measure, the expressed purpose of the Constitution.

Large corporations generally so conduct their affairs that their contracts, in a great number of instances are entered into at the corporation's principal place of business. In addition, corporate contracts generally are drawn by the corporation, especially where the other contracting party is an individual.

If the argument here advanced by the lumber company is accepted, by the simple device of neglecting to mention the place of performance in its contracts, any corporation effectively could limit the venue of actions upon those contracts to its principal place of business. In general, the place of performance also is the place where the breach occurs. Likewise, the place where the contract is made generally is the place where the obligation or liability arises. If the place where the contract is made is to be deemed the place where it is to be performed, then in most instances all of the places specified by the Constitution would become one, the corporation's principal place of business. Such a result would render the constitutional provision a virtual nullity. A plaintiff again, as before the adoption of the Constitution, would be obligated, at considerable expense and hardship, to search out a corporation at its principal place of business in order to enforce a claim against it. Such a patently unjust result could not have been intended by the Legislature when it adopted the 1939 amendment liberalizing venue provisions in regard to all other defendants.

 The lumber company also contends that the disputed portion of section 395 is an implied term of the contract because the laws of the state are as much a part of a contract as though set forth at length among its provisions. This argument overlooks the fact that only applicable laws are so incorporated. The issue here is whether the statutory provision is applicable.

Another suggestion is that section 1, article XII, of the Constitution has returned to the Legislature certain powers of which it was deprived by section 16, article XII. Section 1 provides for legislative regulation of corporations. Nothing therein can be read as affecting the rights of plaintiffs to bring actions against corporations in the places designated by section 16. Section 1 is a regulatory, and not a venue, provision. It confers no power upon the Legislature to restrict the provisions of section 16.

The order is affirmed.

Gibson, C. J., Shenk, J., Carter, J., and Spence, J., concurred.

Traynor, J., and Schauer, J., concurred in the judgment.